UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANE DENMARK,<br><br>    Plaintiff<br><br>v.<br><br>LIBERTY MUTUAL ASSURANCE COMPANY OF BOSTON, THE GENRAD, INC. LONG TERM DISABILITY PLAN, THROUGH TERADYNE, INC., AS SUCCESSOR FIDUCIARY<br><br>    Defendants | Civil Action No. 04-12261-DPW |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR
FOCUSED PRE-TRIAL DISCOVERY RELATING TO
THE SCOPE OF THE ADMINISTRATIVE RECORD**

NOW COMES the plaintiff, Diane Denmark ("Denmark"), and submits this memorandum in support of her motion for focused pre-trial discovery relating to the scope of the administrative record The purpose of the motion is to discover, the scope of documents that comprise the administrative record relating to the basis for Liberty Mutual Assurance Company of Boston's ("Liberty") denial of Denmark's long-term disability benefits ("LTD benefits:).

Denmark seeks to discover claims manuals, instructional and training documents available to Liberty's claims adjusters. These documents should have been disclosed during the internal appeal process and should be disclosed now as part of the record for review before this Court.. The United States Department of Labor regulations require such disclosure, and so does the First Circuit. Glista v. Unum Life Insurance Company of America, F.3d 113, 123 (1st Cir. 2004).

1

Denmark seeks to discover information between Liberty and Network Medical Review / Elite Physician, Ltd ("NMR"). In this instance, Liberty relied on a NMR doctor to support its LTD denial. That doctor, who only reviewed unspecified records, rendered an opinion that conflicted with an examining Independent Medical Examiner doctor who opined that Denmark was occupational disabled, and with the United States Social Security Administration that also found Denmark disabled.

There is substantial reason to believe that NMR does not provide unbiased reviews when retained by insurers, and a number of courts have thus ordered discovery regarding the relationship between NMR and insurers. <u>Darland v. Fortis Benefits Ins. Co.</u>, 317 F.3d 516, 527-531 (6th Cir. 2003); <u>Ladd v. ITT Corp.</u>, 148 F.3d 753 (7th Cir. 1998). Liberty has represented to Denmark that some of her medical records were reviewed by an "independent" doctor and that he concluded she was not disabled, and thus she was not entitled to LTD benefits.

I. **SUMMARY OF THE RELEVANT FACTS**

Denmark who is now fifty seven (57) years old worked for many years as quality control group leader at Teradyne, Inc, and its predecessor Genrad Corporation. At the beginning of October 2001, she ceased working due to chronic health conditions. At that time, Denmark had a well documented medical history that she suffered from Fibromyalgia. In October 2001, her symptoms became overwhelming and prevented her from continuing to work.

In October 2001, Denmark filed an application for short term disability benefits. On December 26, 2001, Liberty, as the purported claims administrator, denied her application for short term disability benefits. Denmark then filed an internal claim appeal.

As part of the internal appeal process, Denmark underwent an examination by an Independent Medical Examiner on April 12, 2002, conducted by Dr. Peter H. Schur, MD. Dr. Schur is a rheumatologist with the Brigham and Women's Hospital, Division of Rheumatology, and Professor of Medicine at Harvard Medical School. Dr. Schur, MD, concluded that Denmark was completely occupationally disabled. Liberty's denial of December 26, 2001 was reversed, and Denmark was paid retroactive short term disability benefits. A copy of the Dr. Schur's report is attached as Exhibit A. Throughout the claim file, Liberty refers to Dr. Schur's exam as an IME

On June 5, 2002, Denmark applied to Liberty for LTD benefits. She notified Liberty that she had already applied for Social Security Disability Income ("SSDI") benefits on March 2, 2002. Liberty denied Denmark's application for LTD benefits despite having reviewed Dr. Schur's IME report, and having knowledge that Denmark had sought SSDI benefits.

Eventually, the United States Social Security Administration found Denmark disabled effective October 2, 2001 and awarded retroactive disability benefits to her. A copy of the decision is attached as Exhibit B.

Denmark continue to engage Liberty in an internal appeal. On December 10, 2002, Liberty denied her application for LTD benefits. The significant reason that Liberty denied her application for LTD benefits was based on a file review of certain medical records by a medical doctor retained by Liberty through its relationship with Network Medical Review / Elite Physicians, Ltd.

In the Spring of 2004, Denmark contacted Liberty requesting her entire claim file. On June 3, 2004, Liberty produced some, but not all relevant documents.

On August 20, 2004, Jonathan M. Feigenbaum wrote to Liberty suggesting that Liberty had violated ERISA and the accompanying Department of Labor Regulations, for reasons including, but not limited to, having failed to disclose relevant documents, when Denmark had requested all pertinent documents. Liberty was advised to review the then recent decision of Glista v. Unum Life Insurance Company of America, 373 F.3d 113 (1st Cir. 2004) ("Such documents are most likely to be relevant where they have been authenticated, have been generated or adopted by the plan administrator, concern the policy in question, are timely to the issue in the case, are consistently used, and were known or should have been known by those who made the decision to deny the claim. Where a plan administrator has chosen consistently to interpret plan terms in a given way, that interpretation is relevant in assessing the reasonableness of the administrator's decision."). *See also*, Cerrito v. Liberty Life Assurance Company of Boston, 209 F.R.D. 663(M.D. Fla. 2002).

On August 23, 2004, Liberty sent to Jonathan M. Feigenbaum a set of documents that had purportedly previously delivered to Denmark when she sought the same. On June 3, 2004, Liberty had sent a set of documents to Denmark that did not include everything that was relevant in Liberty's file, i.e. a surveillance video and claims manual type documents.

Liberty has yet to produce the surveillance video, although its counsel represented on January 19, 2005, that a copy would be delivered soon. This was plainly in contravention to this Court's Scheduling Order which required production of the purported administrative record no later than December 14, 2004. Liberty, however, refuses to produce any claim manual type documents. This is one reason that Denmark now seeks very limited discovery.

**II.**          **THE PLAINTIFF'S DISCOVERY REQUEST**

The Plaintiff is seeking limited discovery relating to the scope of the administrative record.  Specifically, the Plaintiff is seeking:

**DOCUMENTS**

1. The Plaintiff requests that the Liberty produce all claims manuals, instructional and training documents available to Liberty's claims adjusters from October 3, 2001 (the date that Denmark sought benefits)  through August 23, 2004(the date Liberty contended it had produced all relevant records).

2. The Plaintiff requests that Liberty produce the following documents pertaining to its relationship with Network Medical Review - Elite Physicians, Ltd. ("NMR") from January 1, 2002 to the present:

   a. IRS 1099 form(s) regarding compensation paid by Liberty to NMR;

   b. Instructions provided by NMR to its participating physicians concerning writing reports concerning insurance claimants;

   c. Correspondence between Liberty and NMR concerning Denmark.

**INTERROGATORY**

Please state the number of files that Liberty and its affiliated companies have referred to NMR and NMR's affiliated companies or entities, including Elite Physicians Ltd., by year, how much Liberty and its affiliated companies pay for a review, and how much in total, by year, Liberty and its affiliated companies have paid to NMR and NMR's affiliated companies or entities, including Elite Physicians Ltd.

**III.**            **THE RELEVANT LAW**

    **A.**    **Discovery of Claims Manuals, Guidelines and The Like Is Proper.**

In ERISA benefits cases insurers always argue that discovery is not permitted. This simple is not a correct statement of the law[1]. ERISA is devoid of language prohibiting discovery in benefit denial cases. *See generally*, 29 U.S.C. § 1001, *et. seq.* To the converse, the ERISA statute and its implementing regulations reflect the intent of both Congress and the United States Department of Labor to require fiduciaries (usually insurers making benefits decisions) to disclose to beneficiaries, during the appeal process, the basis of its decisions and any documents it *may or may not have* relied upon in making that decision. *See e.g.* 29 U.S.C. § 1132 ( c) (requiring the plan administrator to disclose the plan document and pertinent documents relied upon by the administrator in evaluating the claim within 30 days of receiving a written request and applying a $110 per day penalty on a fiduciary for failing to do so); 29 C.F.R. § 2560.503-1(g)(1)(v)(A) (requiring plan administrator to provide written notification if "an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination" and requiring the disclosure of such information upon request); 29 C.F.R.

---

[1] Glista v. Unum Life Insurance Company of America, F.3d 113, 123 (1st Cir. 2004) ("Such documents are most likely to be relevant where they have been authenticated, have been generated or adopted by the plan administrator, concern the policy in question, are timely to the issue in the case, are consistently used, and were known or should have been known by those who made the decision to deny the claim. Where a plan administrator has chosen consistently to interpret plan terms in a given way, that interpretation is relevant in assessing the reasonableness of the administrator's decision."). Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 25-26 (1st Cir.2003) (Holding discovery was properly denied in this ERISA severance benefits case, but that other situations would permit discovery). *See also*, Cerrito v. Liberty Life Assurance Company of Boston, 209 F.R.D. 663 (M.D. Fla. 2002).

2560.503-1(h)(2)(iii) (requiring as part of a full and fair review of a benefit denial, disclosure of all documents "relevant" to a beneficiaries claim for benefits; a document is "relevant" as defined in section (m)(8)(ii) if, *inter alia,* it "[w]as submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination)[2]. If the documents exist, and are not even relied on making a benefit decision, the Department of Labor considers such documents relevant and subject to disclosure.

 Based on the dictates of the Department of Labor regulations, an administrative record is incomplete if it does not contain the claims manual, training manual, and guidelines that are used to instruct the insurance company's claim employees as to how to evaluate claims and render decisions. Typically in evaluating LTD claims, iinsurance company employees are making medical evaluations and occupational impairment decisions, when they do not have the same education, training or experience, that would be required of an expert witness under *Daubert* and its progeny. Those employees would unlikely be able to ever testify in Court regarding their medical or impairment opinions of claimants. Because insurers acting as fiduciaries are often granted the deference of trustees when making decisions under ERISA, the Department of Labor requires transparency in the claims process to assure fairness. To safeguard against arbitrary decisions, claims manuals, training manuals and guidelines are exceedingly relevant to assure fairness in the claims process. For these reason, the claims manuals, training manuals, and

---

[2]Section 29 C.F.R § 2560.503-1(m)(8)(iv) further requires that documents relevant to a claimants' appeal include: "In the case of a group health plan or plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination."

guidelines that are used to instruct the insurance company's employees on how to evaluate LTD claim must be disclosed as part of the administrative record on review.  Without access to such documents, a plaintiff is left to guess as to whether a decision was arbitrary.

In <u>Glista v. Unum Life Insurance Company of America</u>,  F.3d 113, 123 (1st Cir. 2004), the First Circuit emphasized the appropriateness for transparency in the claim process and for the disclosure of claims manuals and the like, based on the Department of Labor Regulations.  In <u>Glista</u>, the Court stated in part:

> Moreover, under new federal regulations, claimants are entitled to obtain copies of precisely such documents.  ERISA requires that "[i]n accordance with regulations of the Secretary [of Labor]," every employee benefit plan must provide participants whose benefits claims were denied with a "full and fair review" of the denial.  29 U.S.C. § 1133 (2003).  In 2000, the Department of Labor promulgated regulations interpreting "full and fair review" to require that claimants be given access to all "relevant" documents. 29 C.F.R. § 2560.503-1(h)(2)(iii).  Where the plan in question provides disability benefits, the Department of Labor defines "relevant" documents to include "statement[s] of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination." § 2560.503-1(m)(8)(iv).  The Department indicated that these new regulations were intended to make clear that "the claimant should receive any information demonstrating that, in making the adverse benefit determination, the plan complied with its own processes for ensuring appropriate decision making and consistency."  65 Fed.Reg. 70,246, 70,252 (Nov. 21, 2000).

> Although these regulations apply only to claims made on or after January 1, 2002, 65 Fed.Reg. at 70,246, and thus do not apply to Glista's claim, the Department of Labor has made clear that the new regulations were intended to clarify the preexisting ones and that, in its view, the preexisting regulations already

contemplated disclosure of such information. *See* 65 Fed.Reg. at 70,252. In addition, the new regulations reflect the Department of Labor's expert judgment that the benefits of making such information available to claimants outweigh the potential burdens on plan administrators

Despite Liberty's current protestation, the discovery of claims manuals and the like, is permitted under First Circuit law. Other Courts have seemingly followed the guidance of the First Circuit in Glista.

On October 22, 2004, in Murray v. Liberty Life Assurance Company of Boston, a Maine Corporation, a member of the Liberty Mutual Group, Civil No. 02-RB-41 (BNB), the United States District Court for the District of Colorado ordered Liberty to produce " all claims manuals and training and instructional documents available to the personal involved in handing the claim of William Murray from the time he sought disability from any occupation through the date of the denial of his claim." The order of the Court is attached herewith as Exhibit C.

    **B.**    **Discovery of Payments and Instructions Between Liberty and Network Medical Review - Elite Physicians, Ltd. And Its Doctors Is Appropriate.**

In Doe v. Travelers Insurance Company, 167 F.3d 53, 57 (1st Cir. 1999), the Court held that information sought by Denmark is an appropriate subject for discovery:

> Finding out just what information Travelers had and why it acted as it did depends upon the medical notes provided to it, the exchange of correspondence, and the recollections of oral conversations; this in turn can require discovery and even fact finding by the district court. Id. at 57.

At the scheduling conference on December 9, 2004, the Court requested that the plaintiff

provide cases demonstrating that discovery against NMR had been permitted by other Courts.

In Ladd v. ITT Industries, Inc., 1997 WL 769460 (N.D. Ill. 1997), the District Court ordered the insurer, MetLife to respond to discovery. In its opinion, the Court stated in part:

> On October 6, 1997, the court granted Ladd's motion to compel and ordered defendants to comply with all outstanding discovery by the close of the business on October 7. Defendants provided only partial responses. Pl. Resp. Ex. 3 (Affidavit of Joshua Henderson ¶ 3). Ladd filed a motion for a rule to show cause on October 8. Pl. Resp. Ex. 3. Ladd argued that defendants' failure to respond to interrogatories 8 and 9 and document requests 6 and 7 required the imposition of sanctions pursuant to Rule 37(b)(2). *Id.* (Motion at ¶ 2). According to Ladd, the discovery requests were designed to induce production of information to substantiate an argument that MetLife's independent medical reviewer, Network Medical Review, was biased and prejudiced. *Id.* Ladd urged the court to sanction defendants' non-compliance with the order compelling discovery by barring defendants from relying on evidence provided by Network Medical Review or, in the alternative, to deem the Network Medical Review reports as tainted by bias and prejudice. *Id.* (Motion at ¶ 5).

Discovery showed that in course of less than two years Network Medical Review performed over 3,200 reviews, and had received over $1,200,000.00 in consideration for its services. See Ladd v. ITT Industries, Inc., 1997 WL 769460 (N.D. Ill. 1997). Although the District Court found for the defendant insurer, the Seventh Circuit *reversed* and ordered judgment be entered for the plaintiff. Ladd v. ITT Corp., 148 F.3d 753 (7th Cir. 1998).

Following Ladd, in Darland v. Fortis Benefits Ins. Co., 317 F.3d 516, 527-531 (6th Cir. 2003), the Sixth Circuit accurately revealed the insurer's self-interested motivation in using

Network Medical Review's doctors as reviewers:

> "In this case, Fortis' ultimate disability determination was based
> upon the 'peer review' panels selected by Network Medical
> Review Company, which Fortis had contracted to assess Darland's

10

>claim. As the plan administrator, Fortis had a 'clear incentive' to contract with a company whose medical experts were inclined to find in its favor that Darland was not entitled to continued LTD benefits. Accordingly, the existence of an apparent conflict of interest must be taken into account as a 'factor in determining whether there is an abuse of discretion.'" Id., 527-528.

In Wright v. Metropolitan Life Insurance Company, United States District Court for the Middle District of Tennessee, C.A. 3:04-0327, at the scheduling conference, by oral order, permitted the plaintiff to ask a single interrogatory of Metropolitan Life Insurance Company regarding NMR. On September 10, 2004, Metropolitan Life Insurance Company responded with the answer that is attached as Exhibit D. After moving for further interrogatories, on December 6, 2004, the Court required the defendant Metropolitan Life Insurance Company to respond to additional interrogatories regarding the relationship between the insurer, NMR and Elite Physicians, Ltd. A copy of the Court order is attached as part of Exhibit D.

In Winkler v. Metropolitan Life Insurance Company, the United States District Court for the Southern District of New York, C.A., 03-9656, the Court ordered the insurer to disclose information about its non-employee physicians that it used to deny Mr. Winkler's claim. A copy of the transcript is attached as Exhibit E. The response from MetLife yielded information regarding Dr. Gary Philip Greenhood, MD, who is the same doctor disclosed to have been hired by the insurer through Network Medical Review in Wright v. Metropolitan Life Insurance Company. A copy the response is attached as part of Exhibit E.

Attached hereto as Exhibit F is a list that contains 51 cases in which Network Medical Review/Elite Physicians were involved. In virtually every case, the NMR doctor found that the claimant was not disabled.

## **CONCLUSION**

For the foregoing reasons, the plaintiff urges this Court to permit discovery as requested in her motion.

DIANE DENMARK

/s/ Jonathan M. Feigenbaum

Jonathan M. Feigenbaum, Esq.
B.B.O. #546686
Philips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. : (617) 367-8787

Date:
I HEREBY CERTIFY THAT I HAVE SERVED A COPY OF THE FOREGOING TO ALL PARTIES OR THEIR COUNSEL OF RECORD THIS DAY BY MAIL  DELIVERY.

/s/ JONATHAN M. FEIGENBAUM, ESQ
_____
JONATHAN M. FEIGENBAUM, ESQ.


L:\DENM001\MEMO.DISCOVERY.WPD