UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIANE DENMARK,

       Plaintiff

v.

LIBERTY MUTUAL ASSURANCE
COMPANY OF BOSTON, THE GENRAD,
INC. LONG TERM DISABILITY PLAN,
THROUGH TERADYNE, INC., AS
SUCCESSOR FIDUCIARY

       Defendants

Civil Action No. 04-12261-DPW

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR FOCUSED PRE-TRIAL DISCOVERY RELATING TO THE SCOPE OF THE ADMINISTRATIVE RECORD

Defendants, Liberty Life Assurance Company of Boston ("Liberty Life")[1] and The Genrad, Inc. Long Term Disability Plan, Through Teradyne, Inc., as Successor Fiduciary ("the Plan"), hereby oppose Plaintiff's Motion for Focused Pre-Trial Discovery Relating To the Scope of the Administrative Record for the reasons set forth below.[2]

## I.    INTRODUCTION

On or about September 15, 2004, Plaintiff filed this action after her application for long-term disability benefits was denied. She has brought a claim in this case under ERISA, 29 U.S.C. §1132, contending that Liberty Life's decision to deny these benefits was unreasonable. The decision to deny Plaintiff's request for benefits, however, was more than reasonable based on the information before Liberty Life. In this case, the relevant policy contained the appropriate

---

[1] Incorrectly named as Liberty Mutual Assurance Company of Boston
[2] Plaintiff's motion is brought against both Defendants. However, the discovery requests are directed to Liberty Life and the Plan has no documents or information relevant to Plaintiff's requests.

discretionary language requiring the Court to review this case under the "arbitrary and capricious" standard of review, as opposed to a de novo standard of review.

Plaintiff now moves, pursuant to the parties' Joint Statement and the Proposed Pre-trial Schedule and Discovery Plan therein, for substantial pre-trial discovery well beyond the confines of the administrative record. Plaintiff seeks production of "all claims manuals, instructional and training documents available to Liberty's claims adjusters from October 3, 2001 through August 23, 2004." Plaintiff also seeks documents and information regarding the relationship between Network Medical Review – Elite Physicians, Ltd. ("NMR") and Liberty Life from January 1, 2002 to the present. Plaintiff's requests should be denied, because such discovery is not relevant in this straightforward ERISA denial of benefits case. The Court should limit its review of Liberty Life's decision to the administrative record that was before Liberty Life at the time that it rendered its decision. That administrative record has already been produced to Plaintiff and filed with the Court. Plaintiff's requests should also be denied because Plaintiff has failed to provide sufficient explanation as to why further discovery is necessary.

## II.    FACTUAL BACKGROUND

In or about June, 2002, Plaintiff applied for long-term disability benefits through a policy administered by Liberty Life and sponsored by Plaintiff's employer, Teradyne, Inc. Plaintiff, a Group Leader in Manufacturing at Teradyne, sought disability benefits on the basis that she was unable to work due to fibromyalgia, from which she allegedly suffered.

The policy under which Plaintiff seeks benefits includes a provision which defines "disability" or "disabled" as follows:

> "Disability" or "disabled" means:
>
> i.      If the Covered Person is eligible for the 24 Month
>          Own   Occupation   Benefit,   "Disability"   or

"Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform all of the Material and Substantial Duties of his Own Occupation; and

ii.    Thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

On or about August 20, 2002, Liberty Life, after various reviews of Plaintiff's claims file, denied Plaintiff's request for long-term disability benefits because she was not disabled as defined under the policy. This denial was based on the records in the claims file, including an independent medical review by a physician specializing in Physical Medicine and Rehabilitation, who concluded, among other things, that Plaintiff's conditions did not change significantly about the time of her alleged disability. Further, Liberty Life's decision to deny Plaintiff's request for benefits was also based on a subsequent review of Plaintiff's claims file by a registered nurse, who concluded that Plaintiff's limitations did not prevent her from performing the duties of her job.

After Plaintiff appealed this decision, Liberty Life conducted a further review and ultimately upheld its decision to deny benefits on or about December 10, 2002. During its review on appeal, Liberty Life requested and received an independent medical review from a physician board certified in Rheumatology. This physician concluded that the diagnosis of fibromyalgia for Plaintiff's condition was in question and that her condition did not prevent Plaintiff from working full-time at her job based upon the records presented. Therefore, based on the claims file and the independent medical review, the decision to deny Plaintiff's claims for benefits was upheld.

### III.  **PROCEDURAL HISTORY**

Plaintiff filed her complaint on or about September 15, 2004, asserting a claim under Section 502(a) of ERISA for wrongful denial of her long-term disability benefits. Plaintiff also asserted a claim for breach of contract against Liberty Life. Defendants filed their answers to Plaintiff's Complaint on November 19, 2004, in which they denied the allegations. The Court approved the parties' Joint Statement Pursuant to Local Rule 16.1(D), which included a Proposed Pre-Trial Schedule and Discovery Plan. Consistent with this schedule, Liberty Life filed the administrative record with the Court on January 20, 2005.[3]  This schedule provided that if Plaintiff sought discovery in this case, she had to file a motion with the Court "showing cause for discovery." Plaintiff subsequently filed the instant motion for substantial pre-trial discovery.

In her motion, Plaintiff seeks the following discovery:

1.  All claims manuals, instructional and training documents available to Liberty Life's claims adjusters from October 3, 2001 through August 23, 2004;

2.  Documents pertaining to Liberty Life's relationship with Network Medical Review – Elite Physicians, Ltd. ("NMR") from January 1, 2002 to the present, including the following:

    a.  IRS 1099 form(s) regarding compensation paid by Liberty Life to NMR;

    b.  Instructions provided by NMR to its participating physicians concerning writing reports concerning insurance claimants; and

    c.  Correspondence between Liberty Life and NMR concerning Plaintiff.

3.  Plaintiff also requests that Liberty Life respond to the following interrogatory: "Please state the number of files that Liberty and its affiliated companies have referred to NMR

---

[3] Contrary to Plaintiff's assertion in her motion, a copy of the surveillance tape has been produced to Plaintiff.

and NMR's affiliated companies or entities, including Elite Physicians Ltd., by year, how much Liberty and its affiliated companies pay for a review, and how much in total, by year, Liberty and its affiliated companies have paid to NMR and NMR's affiliated companies or entities, including Elite Physicians Ltd."

After receiving Plaintiff's motion, Defendants informed Plaintiff that all of the documents generated during the review of Plaintiff's claim were part of the record, which was previously produced, and, therefore, Defendants had no additional information in response to Request No. 2(c). With regard to Plaintiff's other requests for discovery, Defendants and Plaintiff were unable to reach an agreement. As a result, Defendants oppose those requests, as well as any request to add materials to the administrative record. To the extent that Plaintiff argues that other requests remain before this Court, Defendants oppose those requests as well.

### IV.    SUMMARY OF ARGUMENT

Plaintiff's request for "focused" discovery should be denied for several reasons. First, because Liberty Life's decision to deny Plaintiff's request for benefits will be reviewed under the "arbitrary and capricious" standard, the Court is limited to the record that was before Liberty Life at the time that it made its decision. In addition, even if discovery were permitted, the information or documents received during discovery ultimately cannot be added to the record. Therefore, discovery is fruitless and would merely cause unnecessary expense.

Plaintiff has also failed to present a reasonable basis for her need for the requested discovery. Plaintiff has merely made blanket and overbroad requests for claims manuals and instructional and training materials and for documents relating to the financial relationship between NMR and Liberty Life, but has failed to provide a reasonable degree of particularity as to why this discovery is relevant, why reason exists to expect that the product of this voluminous

discovery would be properly received at trial, and how this discovery would be material to the disposition of this case. In addition and contrary to her own assertions, Plaintiff has failed to show any inconsistencies in the record to warrant a need for such discovery.

Finally, the documents requested by Plaintiff -- the internal claims manuals and training documents available to claims adjustors and documents regarding the financial relationship between NMR and Liberty Life -- are simply not relevant in this case. The decision to deny Plaintiff's application for benefits was based on the claims file and the opinions of the reviewing physicians and nurses. Those documents are part of the administrative record that has already been produced. As a result, no additional documents are necessary nor should they be included as part of the Court's review of this claim.

V.     **ARGUMENT**

A.     **Discovery Should Be Denied Because This Case Will Be Decided Under The "Arbitrary And Capricious" Standard of Review**[4]

In matters governed by ERISA, the standard of review directly impacts the scope of admissible evidence that may be considered by the Court. In turn, the scope of relevant evidence determines the appropriate scope of discovery to be engaged in by the parties. In this case, the applicable standard of review -- arbitrary and capricious/abuse of discretion -- mandates that the Court limit its review to the evidence presented to, and considered by, Liberty Life in making its determination. Therefore, discovery into matters beyond verification of relevant plan documents and of the actual administrative record – as it stood at the time of the final determination – is irrelevant to the claims or defenses of any party and, accordingly, should be prohibited by the

---

[4] Even if this case was somehow decided under the de novo standard of review, discovery should be denied for the reasons set forth in this opposition.

Court. For the same reasons, the Court also should reject any attempts to submit any evidence outside the administrative record and plan documents for purposes of trial or summary judgment.

1.   **Liberty Life's Determination of Plaintiff's Eligibility for Benefits Will Be Reviewed Under The "Arbitrary and Capricious" Standard**

In <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989), the United States Supreme Court held that "[c]onsistent with established principles of trust law, we hold that a denial of benefits under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan." <u>Firestone</u>, 489 U.S. at 115. The law in the First Circuit is clear:   "[w]here a benefits plan grants discretionary authority to the plan administrator, [the First Circuit Court of Appeals] review[s] this administrator's decisions to determine whether they are arbitrary and capricious." <u>Sullivan v. Raytheon Co.</u>, 262 F.3d 41, 50 (1st Cir. 2001) (citing <u>Pari-Fasano v. ITT Hartford Life & Accident Ins. Co.</u>, 230 F.3d 415, 418 (1st Cir. 2000) and <u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 40 (1st Cir. 1998)).   As explained in Defendants' motion regarding the scope of review in this case, such discretionary language is present. The Plan expressly states, at Section 7:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder.   Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

Such language provides a clear grant of discretionary authority to Liberty Life, by allocating to it the right to make factual findings, to determine eligibility for benefits, and/or to interpret the terms of the Plan. See <u>Terry</u>, 145 F.3d at 37 (holding that Plan in that case properly granted

discretionary authority to Plan Administrator, because it allocated to the Company the right to find necessary facts, determine eligibility for benefits, and interpret the terms of the Plan).

The "arbitrary and capricious" standard requires this Court to determine only whether a deciding administrator's decision is plausible in light of the record as a whole, or, put another way, whether the decision is within the administrator's authority, reasoned and supported by substantial evidence on the record, that is, evidence reasonably sufficient to support a conclusion. See Pari-Fasano v. ITT Hartford Life & Accid. Ins. Co., 230 F.3d 415, 419 (1st Cir. 2000); Sullivan v. Raytheon Corporation, 262 F.3d 41, 50 (1st Cir. 2001).

"Moreover, the existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary." Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 30 (1st 2001). Under this standard, "'a court is not to substitute its judgment for that of the [decision-maker].'" Terry v. Bayer Corporation, 145 F.3d 28, 40 (1st Cir. 1998). The deciding administrator's decision will be upheld if reasonable. See id.

Because this standard emphasizes reasonableness, the standard recognizes "that in order to find that an insurer had abused its discretion under the contract, [a court] would have to conclude that the insurer's eligibility determination was unreasonable in light of the information available to it." Pari-Fasano, 230 F.3d at 419.

## 2.  The Scope of Admissible Evidence Is Limited to the Administrative Record and Relevant Plan Documents

Under the arbitrary and capricious/abuse of discretion standard, it is well-settled that this Court's review of the denial of Plaintiff's claim for benefits is limited to the information available to, and considered by, Liberty Life at the time of the denial. See Doe v. Travelers Insurance Company, 167 F.3d 53, 58 and n. 3 (1st Cir. 1999); Jorstad v. Connecticut Gen'l Life

Ins. Co., 844 F.Supp. 46, 56 (D.Mass. 1994)[5]. It is also well-settled that accepting additional records outside of the administrative record would "eviscerate the abuse of discretion standard, and in any case, is only justifiable where the decision itself was unreasonable or outside of a express grant of discretion. . ." Downey v. Aetna Life Insurance Company, 2003 U.S. Dist. LEXIS 8150, *38 (D.Mass. 2003) (J. Woodlock).

The principle behind the rule that the Court's review is limited to the information available to Liberty Life at the time of its decision is not designed to create a stumbling block for ERISA participants and beneficiaries. Rather, it is a matter of carefully designed public policy intended to prevent the "transfer [of] the administration of benefit and pension plans from their designated fiduciaries to the federal bench." Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 and n.4 (4th Cir. 1985); see also Brown v. Seitz Foods, Inc. Disability Benefits Plan, 140 F.3d 1198, 1200 (8th Cir. 1998) (citations omitted) ("additional evidence gathering is ruled out on deferential review, and discouraged on de novo review to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators"). In addition, a primary goal of ERISA was "to provide a method for workers and beneficiaries to resolve disputes over benefits *inexpensively and expeditiously*." Taft v. Equitable Life Assurance Society, 9 F.3d 1469, 1472 (9th Cir. 1993)(citations omitted)(emphasis supplied).[6]

Here, Plaintiff attempts to circumvent this primary goal of inexpensive and expeditious resolution by relying on specific cases in which Plaintiff alleges the courts permitted specific

---

[5] See also Heller v. Fortis Benefits Ins. Co., 142 F.3d 487, 493 (D.C. Cir. 1998) ("Courts review ERISA-plan benefit decisions on the evidence presented to the plan administrators, not on a record later made in another forum.")(citing Block v. Pitney Bowes, Inc., 952 F.2d 1450, 1455)); Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995) (where plan provides discretionary authority, evidence is limited to that before the decisionmaker at the time of its decision).

[6] See also footnote 11, infra.

discovery relating to internal training materials or discovery relating to the independent physicians who reviewed the particular claim.   As discussed below, Plaintiff mischaracterizes the holdings in several of those cases.  In addition, the decisions in those cases are fact-specific, and those facts are distinguishable from the case at bar.

In addition, the First Circuit has also held that fact-finding or evidence outside the Administrative Record is unnecessary where the record is sufficient to demonstrate a reasonable basis for a benefits determination.  See Doe, 167 F.3d at 58.  In this case, the opinions of the reviewing physicians and the other records in the claims file are sufficient to demonstrate a reasonable basis for the denial of Plaintiff's claim for benefits.   As a result, discovery is unnecessary, and this Court should deny Plaintiff's motion.

### 3.    Relevant Caselaw Illustrates That Discovery Is Routinely Denied In Cases Such As This

In cases in which the arbitrary and capricious standard of review applies, Courts have routinely denied discovery requests similar to Plaintiff's.  See Wilson v. Liberty Life Assurance Company of Boston, D. Mass., C.A. No. 03-10927-MEL (June 4, 2004) (attached hereto as Exhibit A) (denying discovery requests for internal manuals referencing or interpreting plan provisions and relating to review of claims, and requests relating to reviewing physicians because Plaintiff failed to show good cause or materiality of information requested).   See Liston v. Unum Corporation, 330 F.3d 19 (1st Cir. 2003) (denying discovery requests seeking information regarding handling of similar claims by other participants); Downey v. Aetna Life Insurance Company, 2003 U.S. Dist. LEXIS 8150 (D. Mass. 2003)(denying discovery related to the plaintiff's conflict of interest argument).  See also Steiner v. Hartford Life and Accident Ins., 2004 U.S. Dist. LEXIS 20022 (N.D.Cal. June 4, 2004) (denying discovery requests relating to bias of consulting physicians and relating to claims manuals); Kraus v. Standard, 162 F.3d 1173

- 10 -

(10th Cir. 1998) (denying discovery generally); Maune v. International Brotherhood of Electric

Workers, 83 F.3d 959, 963 (8th Cir. 1996) (same).

The First Circuit in Liston emphasized the rule that the review of a denial of benefits is

limited to the claims file:

> The ordinary rule is that review for arbitrariness is on the record made
> before the entity being reviewed. True, we have declined in cases like this
> one to adopt an ironclad rule against new evidence. For example,
> discovery may be needed because the decisional process is too informal to
> provide a record. And certain kinds of claims –e.g., proof of corruption –
> may in their nature or timing take a reviewing court to materials outside
> the administrative record.
>
> Still, at least some very good reason is needed to overcome the strong
> presumption that the record on review is limited to the record before the
> administrator. This is the view of virtually all of the circuits with the
> possible exception of the Fifth Circuit. It is almost inherent in the idea of
> reviewing agency or other administrative action for reasonableness; how
> could an administrator act unreasonably by ignoring information never
> presented to it?
>
> Even where de novo review exists under ERISA, it is at least doubtful that
> courts should be in a hurry to consider evidence or claims not presented to
> the plan administrator. . .

See Liston, 330 F.3d at 23-24 (citations omitted). In Liston, the Court held that where review is

under the arbitrary and capricious standard, the ordinary question is whether the administrator's

decision was reasonable. Id. at 24. The Court then held that the plaintiff's request for discovery

regarding the treatment of similarly situated people was properly denied by the lower court. Id.

at 26. In reaching this decision, the Court noted that such an issue "should be raised in the first

instance during the claims process" and that a plaintiff must show that "the outcome of discovery

would be helpful before she can get access to materials" that he/she seeks. Id. at 25-26. Here,

Plaintiff failed to raise her requests for the materials she now seeks during the claims process,

- 11 -

and she has failed to show that the discovery would be helpful to her case. Therefore, her belated request should be denied.

Even though the general rule is that evidence outside the record should not be added, Defendant acknowledges that some Courts have permitted limited discovery in ERISA cases. Under certain circumstances, for instance, some courts have recognized an exception for discovery related to determining the appropriate standard of review. See e.g. Wagner v. First UNUM Life Ins. Co., 2004 U.S. App. LEXIS 11632 at *864 n.1 (2d Cir. 2004) (citing Farley v. Arkansas Blue Cross & Blue Shield, 147 F.3d 774, 776 n.4 (8th Cir. 1998)). Ordinarily, however, even if such discovery is permitted, it is strictly limited in scope. See e.g. Farley, 147 F.3d at 776, n.4 (permitting "limited discovery for the purpose of determining the appropriate standard of review") (emphasis added).

### 4.    Plaintiff's Reliance on Glista v. UNUM Life Is Misplaced

Plaintiff relies on Glista v. UNUM Life Insurance Company of America, 378 F.3d 113 (1st Cir. 2004), to support her argument that she is entitled to discovery of all internal manuals and training materials over a several year period. In Glista, the plaintiff sought to include specific guidelines and training materials from the defendant used to train its decision makers regarding a pre-existing condition exclusion and also sought to include related deposition testimony which she obtained during discovery. See Glista, 378 F.3d at 115. While the First Circuit determined that certain manuals and training material were relevant and admissible, the Court limited its holding throughout the decision. First, the Court noted at the beginning of its decision that it "decline[d] to adopt [a] hard-and-fast[] rule[] as to" whether the manuals and training material were admissible. Id. at 115. In addition, the Court acknowledged that "[t]he weight and admissibility of internal documents, whether those documents are offered in support

of the interpretation of the plan administrator or that of the claimant, will vary with the facts of each case."[7]  Id. at 123.  Finally, in deciding that such materials were admissible, the Court held that they were relevant to the interpretation of a specific clause in the policy relating to pre-existing conditions.[8]  Id. at 124.

Glista is therefore distinguishable from the case at bar.  In Glista, the plaintiff disputed the interpretation of the pre-existing condition clause in the policy.  Id. at 115.  The dispute was based entirely on the interpretation of the clause, not the facts of the case or diagnosis of the plaintiff's condition.  Here, Plaintiff disputes Liberty Life's evaluation of her medical condition.  Liberty Life's evaluation was based on the opinions of the reviewing physicians and nurses, not necessarily on an interpretation of a policy provision.  Indeed, the First Circuit itself noted this distinction in Glista when it explained that "[t]he documents [in the Glista case] shed light on the 'legal' rule the Plan applies, not the underlying facts presented to the Administrator."  See Glista, 378 F.3d at 122-123.

Contrary to Plaintiff's assertion, Glista does not hold that all training materials are admissible.  Moreover, unlike in Glista, this case does involve a dispute of an interpretation of a policy provision, but involves a dispute over the opinions of various physicians regarding Plaintiff's ability to work.  Finally, unlike in Glista, the issue before the Court is not the

---

[7] Contrary to Plaintiff's assertion that "[b]ased on the dictates of the Department of Labor regulations, an administrative record is incomplete if it does not contain" manuals and training materials, the First Circuit in Glista explained that while a claimant may be entitled to receive certain documents from the benefit plan, there is a separate analysis to determine whether such documents are admissible in a court proceeding.  Here, as noted below, even if Plaintiff is permitted to discover such documents, she has waived her right to have these documents added to the record  As a result, these materials should not be included in the administrative record.  Accordingly, permitting Plaintiff to obtain these records ultimately will result in wasted time and unnecessary expense.

[8] It is important to note that in Glista, the lower court permitted discovery but did not permit Plaintiff to add material obtained during discovery to the record  The First Circuit overruled that decision.  Here, however, Plaintiff has failed to move to have the material requested in discovery added to the record  Based on the scheduling order, Plaintiff was required to submit a separate motion to request the addition of material to the record by February 4, 2004.  Plaintiff failed to file any such motion.  Therefore, even if discovery is permitted in this case, Plaintiff has waived her right to add any material obtained in discovery to the record.

admissibility of the documents, but whether discovery of the material will be permitted.  As such, <u>Glista</u> is inapplicable to this case.[9]

<h3 style="text-align:center">C.    Plaintiff Is Not Entitled To Discovery Because She Has Failed To Present A Sufficient Cause For Her Requests</h3>

Plaintiff fails to meet her burden regarding her request for production of internal manuals and training materials and records relating to the relationship between Liberty Life and NMR. Plaintiff's requests for certain internal documents should be denied, because the documents Plaintiff seeks are irrelevant to the determination made by Liberty Life in this case.  Liberty Life concluded, based on the claims file and several medical reviews, that Plaintiff's medical conditions did not prevent her from performing her job duties on a full-time basis.  The claims file, therefore, contains the only relevant material in this case.  In addition, Plaintiff's requests for information regarding Liberty Life's training manuals and records relating to the financial relationship between NMR and Liberty Life are overly broad and lack the necessary specificity to warrant consideration by this Court.[10]

Plaintiff claims that she is entitled to discovery relating to NMR, because the opinion of Dr. Bomalaski, an independent rheumatologist who reviewed Plaintiff's file, somehow conflicted with the opinion of another physician, Dr. Schur.  These opinions, however, do not necessarily conflict with one another.  Dr. Schur opined that Plaintiff was disabled "for the time being" and

---

[9] In her motion, Plaintiff also cites to <u>Murray v. Liberty Life Assurance Company of Boston</u>, Civil No. 02-RB-41, a case from the District of Colorado, to support her argument that she is entitled to claims manuals and training and instructional materials.  The document relating to this decision attached to Plaintiff's brief does not reveal the specific facts of the case, the reasons for the court's granting of the discovery requests, nor the reasons proffered by the plaintiffs for requiring such discovery.  In addition, this decision is by a court outside this circuit.

[10] Each of Plaintiff's requests seeks documents or information that are well beyond time periods that may be relevant in this case.  For example, in request no. 1, Plaintiff seeks manuals, instructional, and training materials from October 3, 2001 through August 23, 2004.  Plaintiff, however, did not file her claim for long-term disability benefits until June 2002 and the final denial of her appeal on this claim was dated December 10, 2002.  As such, Plaintiff's request seeks documents for time periods well beyond the dates that are relevant in this case.

- 14 -

that she was disabled "until her regime [was] modified which [could] take months." Consistent with this opinion, Dr. Bomalaski, who reviewed Plaintiff's file approximately 8 months after Dr. Schur rendered his opinion, concluded that Plaintiff was not disabled. Also, like Dr. Schur, Dr. Bomalaski questioned the diagnosis of fibromyalgia. The report of Dr. Bomalaski is attached hereto at <u>Exhibit B</u>.

In addition, Plaintiff's request for documents and information related to Liberty Life's relationship with NMR should be denied because Plaintiff has not even attempted to show how such information is relevant to this case nor has she explained her need for information outside of the administrative record. See <u>Doe</u>, 167 F.3d at 58. In her document requests, Plaintiff seeks tax records relating to the compensation paid by Liberty Life to NMR, the instructions given by NMR to the reviewing physicians[11], and correspondence between Liberty Life and NMR related to Plaintiff. (Plaintiff's Document Request No. 2) Plaintiff also seeks, in the form of an interrogatory, the number of files Liberty Life and its affiliated companies have given to NMR for review, the amount Liberty Life and its affiliated companies pay NMR for a review, and the total amount Liberty Life and its affiliated companies have paid to NMR on an annual basis. While Plaintiff relies on three cases, which she claims involve disclosure of similar information, she has not provided any specific argument as to why such information is relevant to <u>this case</u>. Nor has Plaintiff explained her need for such information. Accordingly, Plaintiff has failed to show cause for her need for such information. As a result, the Court must deny her discovery request.

As explained above, Plaintiff's request for documents and information related to Liberty Life's working relationship with NMR should also be denied due to the overly broad nature of

---

[11] The request for instructions given by NMR to the reviewing physicians seeks information which Liberty Life does not possess

the discovery requests. Indeed, Courts have routinely denied discovery where it is apparent that the purpose of the discovery is a fishing expedition pursued solely in the possibility that a conflict of interest issue may arise. Abram v. Cargill, Inc., 2003 U.S. Dist. LEXIS 7027, at *7-11 (D. Minn. Feb. 10, 2003); see also Newman v. Standard Ins. Co., 997 F. Supp. 1276 (C.D. Cal. 1998) (disallowing discovery as to possible conflict of interest). Liberty Life handles a significant number of benefits claims each year and, thus, responding to Plaintiff's discovery requests would be an overly burdensome undertaking, especially where Plaintiff cannot show the relevance of such information.

Moreover, the cases relied upon by Plaintiff provide little support for her request for discovery relating to the relationship between Liberty Life and NMR. In the Ladd, Wright, and Winkler cases cited by Plaintiff, the documents related to these cases attached to Plaintiff's brief allude to the fact that the courts granted requests for discovery. None of the documents, however, reveal the specific facts of the cases, the reasons for the courts' granting of the discovery requests, nor the reasons proffered by the plaintiffs for requiring such discovery. Further, each of these cases are from courts outside this circuit and the Darland case did not even involve a request for discovery, only cross motions for summary judgment.

Further, information related to the relationship between Liberty Life and NMR is irrelevant here. See Abromitis v. Continental Casualty Co., 2004 U.S. App. LEXIS 23310 at **9 (4th Cir. Nov. 5, 2004). In Abromitis, the plaintiff requested discovery of the following information: (1) the number of times the defendant had contracted with the vocational consultant; and (2) the amount of money paid to the vocational consultant or her company in connection with services performed relating to long-term disability claims. Abromitis v. Continental Casualty Co., 261 F.Supp.2d 388, 389 (W.D.N.C. 2003). The Fourth Circuit upheld

the denial of the plaintiff's request, stating that the conflict of interest of the defendant's paid employees and consultants and the amount of business provided to consultants by the insurer is not relevant in a denial of benefits claim. Abromitis, 2004 U.S. App. LEXIS 23310 at **9. In denying the plaintiff's request, the district court appropriately explained that the consultant was not the decision maker in the case, and that the court was reviewing the defendant's decision to deny benefits, not the consultant's report. Abromitis, 261 F.Supp.2d at 390. As in Abromitis, information regarding the relationship between NMR and Liberty Life is simply not relevant to the issue at hand – whether Liberty Life abused its discretion in denying Plaintiff's request for benefits.

Courts have likewise denied discovery of information outside the administrative record where plaintiffs have claimed such information is relevant to the insurer's alleged conflict of interest. See Downey v. Aetna Life Ins. Co., 2003 U.S. Dist. LEXIS 8150, *40 (D.Mass. 2003) (denying plaintiff's request for discovery of information relating to relationship between insurer and employer where the discussions, assuming they occurred, are not germane to the question of whether substantial evidence supports termination of plaintiff's disability benefits and any connection between relationship and disability relationship is utterly speculative); Steiner v. Hartford Life and Accident Ins., 2004 U.S. Dist. LEXIS 20022 (N.D.Cal. June 4, 2004) (denying plaintiff's motion to compel discovery of contracts between insurer and consultants, amount of business between insurer and consultants, and compensation paid by insurer to consultants where plaintiff proffered no exceptional circumstances to justify discovery outside of the administrative record); Newman, 997 F. Supp. at 1281 (denying plaintiff's request for discovery relating to

insurer's conflict of interest where allowing requested discovery would frustrate purposes of ERISA)[12].

Further, Plaintiff's Exhibit F, which purportedly lists fifty-one cases in which NMR's physicians have found that the claimant was not disabled, is a meaningless and incomplete statistic. This statistic is flawed because it does not account for the instances where NMR's physicians have found that a claimant is disabled and, accordingly, the claimant has not brought a suit for denial of benefits. Obviously, denial of benefits cases almost always involve a medical reviewer's finding that a claimant is not disabled. And it is likewise obvious that in cases where medical reviewers find otherwise, there generally is no denial of benefits issue to litigate. The absence of a valid comparator – i.e., the number of situations where NMR's physicians have found a claimant disabled - renders Plaintiff's reliance on statistical information in support of her request for discovery meaningless.

In summary, Plaintiff has failed to present compelling reasons why she should be allowed discovery in this matter of Liberty Life's relationship with NMR and how the requested information would assist the court. Accordingly, the Court should deny her requests for

---

[12] Indeed, in Newman, the Court explained the rationale for denying discovery in ERISA cases:

> Although [discovery on the issue of conflict of interest] makes a certain amount of logical sense, there are immense practical problems associated with this position. If this position were the law, then every ERISA case involving an administrator who is also the Plan funding source would involve far-reaching, open-ended, nearly limitless discovery. Plaintiffs would depose claims reviewers, consulting physicians, and corporate officers of plan administrators. They could inspect claims manuals and other documents describing the claims review process, and personnel files, employee evaluations, and other documents tending to show that employees of the administrator were pressured or rewarded for denying claims. Then, following this discovery, the issue of the decisionmaker's motivation would be extensively litigated, perhaps involving days or weeks of testimony. The expense of ERISA litigation could easily be more than the benefits at issue. Such an outcome flies in the face of the purpose of ERISA.

Newman, 997 F.Supp. at 1280-1281.

discovery of internal manuals and information related to the relationship between NMR and Liberty Life.

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiff's Motion For Focused Pre-Trial Discovery Relating To The Scope Of The Administrative Record should be denied.

**REQUEST FOR ORAL ARGUMENT**

Defendants hereby request oral argument on Plaintiff's Motion for Focused Pre-Trial Discovery and Defendants' opposition thereto, pursuant to Local Rule 7.1(D), to the extent the Court believes that a hearing on the motion would aid its decision in this matter.

Respectfully submitted,

LIBERTY LIFE ASSURANCE COMPANY OF
BOSTON, THE GENRAD, INC. LONG TERM
DISABILITY PLAN, THROUGH TERADYNE,
INC., AS SUCCESSOR FIDUCIARY
By their attorneys,

/s/ Richard W. Paterniti
Andrew C. Pickett, BBO# 549872
Richard W. Paterniti, BBO#645170
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

March 11, 2005

# EXHIBIT A

# E N D O R S E M E N T

PAMELA J. WILSON v. LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
03-CV-10927-MEL

LASKER, D.J.

       Pamela Wilson ("Wilson") brings an ERISA action to
recover long-term disability benefits allegedly wrongfully denied
under an employee benefits disability plan issued by Liberty Life
Assurance Co. of Boston ("Liberty").  At issue is Wilson's motion
for limited pre-trial discovery and to clarify the parameters of
the administrative record.

       Although this is not a motion for summary judgment,
given the nature of Wilson's motion, it is reasonable that the
discovery principles propounded by Fed. R. Civ. P. 56(f) would be
applicable to this case.  To benefit from Rule 56(f), a party
must show: "authoritativeness, timeliness, good cause, utility
and materiality." <u>Resolution Trust Corps v. North Bridge Assoc.</u>,
22 F.3d 1198, 1203 (1st Cir. 1994).  Wilson's motion fails to
demonstrate good cause for, and materiality of, the requested
discovery.

       Specifically, Wilson's arguments are unpersuasive in
explaining why the document requests and depositions would
produce facts that are necessary to supplement the administrative
record.  Neither do Wilson's contentions demonstrate a plausible
basis for believing that certain facts, if adduced, would
influence the outcome of the judicial review of the record.
Wilson simply presents an insufficient need to warrant the
extraordinary relief of discovery in an ERISA action.

       Accordingly, the motion is DENIED.

       It is so ordered.


Dated:     June 4, 2004
           Boston, Massachusetts     <u>/s/ Morris E. Lasker</u>
                                          U.S.D.J.

# EXHIBIT B



*Elite Physicians®, Ltd.*

*A Subsidiary of*
**NMR**

*Providers of Evidence-Based Medical Reports*

December 4, 2002


Ms. Michelle Scott
Liberty Mutual Insurance
P.O. Box 37500
Phoenix, AZ 85069

| | |
|---|---|
| **RE:** | Diane Denmark |
| **CLAIM #:** | 735355 |
| **SS #:** | 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 |
| **NMR #:** | D21383.01 |

Dear Ms. Scott,

Thank you for referring this file for review, to determine Ms. Denmark's level of functionality. Specific issues will be addressed at the end of the report.

**ASSESSMENT:** A thorough review of the provided medical records was completed. From a rheumatology perspective, the primary diagnosis affecting Ms. Denmark's ability to work may be fibromyalgia.

Ms. Denmark's initial physical complaints are unclear; however, medical records are provided, mentioning in 1996 that her sedimentation rate was 15, and she was on prednisone for polymyalgia rheumatica. She had tolerated prednisone poorly with shakes and tremors. This treatment was apparently provided by her family physician, Dr. Gregory Malanoski. On physical examination, there was no musculoskeletal examination present except the notation of a fine resting tremor, and she was noted to discontinue the prednisone; and then she had polymyalgia rheumatica. In a follow-up visit, he diagnosed her with fibromyalgia though no tender points were present. Evaluation by Dr. Malanoski on 10/05/99 noted that her fibromyalgia was controlled. On 10/04/01, she was again reevaluated, and she was doing poorly with myalgias. Her medications included Prilosec, Claritin, Atenolol, Calan, Isordil, Dyazide, KCl, Pravachol, and Gaviscon. No notation of antirheumatic agents such as nonsteroidal anti-inflammatory drugs or muscle relaxers is noted.

From the same office of Primary Care Specialists, a 10/09/01 rheumatology note reports a diagnosis of fibromyalgia, and no physical examination was noted. Daypro was to be continued.

A letter from Thomas A. Goodman, MD, who was a rheumatologist with Primary Care Specialists, diagnosed fibromyalgia with multiple trigger-points in Ms. Denmark

*6778 Mill Road*
*Rockford, Illinois 61108*

*Phone: 815-399-5180*
*Fax: 815-399-5437*

*E-Mail:*
*info@elitephysicians.com*

*Visit our website*
*www.nmrco.com*



**ACCREDITED**
*Utilization Review Organization*

RECEIVED
JAN   3 2003
Liberty Life Phoenix AZ

AR00331



RE: Diane Denmark                                                NMR#: D21383.01
Page 2                                                          December 4, 2002

was treated with Daypro and Elavil. The other physician in Internal Medicine is Dr. Gregory Malanoski.

A psychologic consultation from Nopen Taylor, Ph.D. of 07/26/01 noted a primary diagnostic impression of adjustment disorder with depressed mood as well as a diagnosis of sleep disturbance.

Dr. Goodman referred Ms. Denmark to Peter H. Schur, MD, at Harvard Medical School, Brigham and Women's Hospital. He examined her on 04/12/02. He noted aching pain and discomfort and indicated that she could no longer work. She had typical fibromyalgia tender points on examination. Her medications did include at least Daypro 600 mg and Nortriptyline. Amitriptyline made her drowsy, and Flexeril did not help. No laboratory tests were reviewed nor ordered, although he did believe that this was classic fibromyalgia. He was, however, concerned that her shoulder and pelvic girdle problems plus her history of elevated sedimentation rate would make one suspect PMR (polymyalgia rheumatica). He also raised the possibility of rheumatoid arthritis, that further diagnostic studies including rheumatoid factor, C-reactive protein, and x-rays of the hands might show.

The physical examination and testing do not support the diagnosis of Ms. Denmark's treating physicians, at least within the records provided.[1] There is no documentation of laboratory testing ruling out coexisting causes of myalgia such as hypothyroidism or disorders of calcium metabolism.[2,3] She did have an elevated sedimentation rate in the past, and further testing related to that is not available nor is a rheumatoid factor, as suggested by Dr. Schur.

Ms. Denmark has areas of discomfort on examination, but objective findings such as abnormal laboratory tests are not provided in the medical records for review. Limitations of ability to function are difficult to assess related to Ms. Denmark's impairment, although at least a portion of that is related to the surveillance photos which do show that she is able to go shopping, uses a grocery cart and is able to lift with one hand a gallon of water from a grocery cart and put that into her car. Issues of safety have been addressed in the Functional Capacities Form. She would be functioning primarily in a sedentary environment.

The records support that Ms. Denmark has been receiving regular medical care; however, the medical records provided do not fully document that laboratory studies have been performed to rule out other diagnoses as suggested by the consultant rheumatologist, Dr. Peter Schur.[2,3] Other treatments or medications would include other muscle relaxants besides Flexeril. There are a number of different muscle relaxants available such as Skelaxin, Parafon Forte and Norflex, which have not been documented as having been tried in the records provided. Also Ultram or Ultracet is a medication which can sometimes be of benefit. Furthermore, treating her underlying depression may be of benefit as well in improving her overall general discomfort.[4]



**In answer to your specific questions:**

1. **What are the current signs and symptoms related to Fibromyalgia that are presented in the medical records?**

The current signs related to fibromyalgia are Ms. Denmark's areas of subjective discomfort on examination. Symptoms relate to fatigue, generalized aching and discomfort.

2. **Does the clinical medical evidence support any severe impairment(s)?**

The clinical medical evidence does not clearly support severe impairment because as noted the diagnosis of fibromyalgia remains in question not only by this reviewer but also by Dr. Schur, the consultant rheumatologist who had examined Ms. Denmark at the request of her treating rheumatologist, Dr. Goodman.

3. **What functional limitations and physical restrictions are present as a result of her condition (please review the activity Check Report and Photographs). Does it prevent a return to full time work? Review the Vocational Report that details what the physical requirements are for her position as it is customarily performed in the national economy. Please indicate if she would have any work restrictions in an eight hour work day.**

Functional limitations and physical restrictions in an eight hour work day are noted on the enclosed Functional Capacities Form. Her condition does not prevent a return to full time work.

4. **If currently unable to perform any occupation please indicate prognosis and time frame for return to work. If not under the appropriate care and treatment, please make recommendations for treatment that, if instituted, could allow for improvement in condition, increased functionality and ultimately a return to work.**

As stated above, based on the available medical information, from a rheumatology perspective, Ms. Denmark is capable of working full time in a primarily sedentary position within the limitations and restrictions noted on the Functional Capacities Form. Laboratory studies should be performed to rule out other diagnoses as suggested by the consultant rheumatologist, Dr. Peter Schur. Other treatments or medications would include other muscle relaxants besides Flexeril such as Skelaxin, Parafon Forte and Norflex. Also Ultram or Ultracet is a medication that can be of benefit. Treating her underlying depression may be of benefit as well in improving her overall general discomfort.



RECEIVED

JAN  3 2003

Liberty Life Phoenix AZ

If you have any additional questions, please contact our office.

Sincerely,

*John S. Bomalaski, M.D.*

John S. Bomalaski, M.D.
Board Certified Internal Medicine, Rheumatology
Fellow, American Academy of Disability Evaluating Physicians
Professor of Medicine
Medical College of PA & Hahnemann University
PA License # - MD-026634-E

JSB/DH/TTS21:mpb
D: 12/02/02
T: 12/03/02
JOB#: 6365/113512

1    Wolfe, F., Smythe, H.A., Yunus, M.B., Bennett, R.M., Bombardier, C., Goldenberg, D.L., Tugwell, P., Campbell, S.M., Abeles, M., Clark, P., Fam. A.G., Farber, S.J., Fiechtner, J.J., Franklin, C.M., Gatter, R.A., Hamaty, D., Lessard, J., Lichtbroun, A.S., Masi, A.T., McCain, G.A., Reynolds, W.J., Romano, T.J., Russell, I.J., & Sheon, R.P. (1990). The American College of Rheumatology 1990 criteria for the classification of fibromyalgia: Report of the multicenter criteria committee. Arthritis and Rheumatism, 33 (2):160-172.

2    Reed, P. (Ed.), ( 1997). Fibromyalgia and myofascial pain syndrome. In The Medical Disability Advisor:Workplace Guidelines for Disability Duration, (3rd ed. pp.624-629). Boulder, CO: Reed Group, Ltd.

3    Freundlich, B. & Leventhal, L. Signs and Symptoms of Musculoskeletal Disorders / C. Diffuse Pain Syndromes (11th ed., pp. 123-127) Primer on the Rheumatic Diseases.

4    American Medical Association. (1993). Pain. In American Medical Association's Guides to Evaluation of Permanent Impairment,(4th ed., pp. 303-314). Chicago: American Medical Association.

RECEIVED
JAN  3 2003
Liberty Life Phoenix AZ

AR00334



Liberty Life Assurance Company of Boston
Disability Claims

## FUNCTIONAL CAPACITIES FORM

Patient Name: _Diane Denmark_    S S #: ___ - ___ - ___

Employer/Sponsor: _____    Claim #: _____

Liberty Mutual Case Manager: _____    Extension: _____

Date First Treated: _____ Date Last Treated: _____ Date of Next Scheduled Appointment: _____

Frequency of Visits: ☐ weekly    ☐ monthly    ☐ other (please specify): _____

Diagnosis and Concurrent Conditions with ICD9 Code(s): _____

Hospital Confined? ☐ No   ☐ Yes  Admission Date: _____ Discharge Date: _____

Surgery Performed? ☐ No   ☐ Yes  Surgical Procedure(s): _____ Surgery Date(s): _____

**PHYSICAL CAPACITY** (please check one box for each activity based on what the patient is capable of performing in an average 8 hour work day):

| | No Restrictions | Frequently (1/3 to 2/3 of the time) | Occasionally (up to 1/3 of the time) | Unable to |
|---|---|---|---|---|
| Sitting | | | X | |
| Standing | | | X | |
| Walking | | | X | |
| Squatting | | | } | |
| Bending | | | } | |
| Kneeling | | | } Seldom | |
| Climbing stairs | | | } | |
| Driving | | | X | |
| Pushing | | | X | |
| Pulling | | | X | |
| Reaching | | | X | |
| Grasping | | | X | |

| | No Restrictions | Frequently (1/3 to 2/3 of the time) | Occasionally (up to 1/3 of the time) | Unable to |
|---|---|---|---|---|
| Repetitive Motions: | | | | |
| Wrist | | | X | |
| Elbow | | | X | |
| Shoulder | | | X | |
| Ankle | | | X | |
| Lifting: | | | | |
| Less than 10 lbs | | | X | |
| 10 lbs to 20 lbs | | | X | |
| 20 lbs to 30 lbs | | | | |
| 30 lbs to 40 lbs | | | | |
| 40 lbs to 50 lbs | | | | |
| Over 50 lbs | | | | |

Please describe in detail the objective medical findings that support the above restrictions and limitations (if any) _____
_able to lift a gallon of water (10 pounds) with one hand + place in car from grocery cart_

How long will these restrictions be imposed? _not determined_

What have you prescribed, i.e., a rehabilitation or therapy program, to facilitate an improvement in functional capacity?
_a reviour, not a treating physician_

Estimated Return to Work Date: _12/2/02_ _____ (We believe that returning to work earlier, e.g., on a Thursday rather than the following Monday, allows patients a reasonable transition period and assists in ensuring a successful return to work.)

Please forward copies of your office notes and test results for this patient for the period from _____ through _____

RECEIVED
JAN 3 2003
Liberty Life Phoenix AZ

Provider's Name (PLEASE PRINT): _John S Bomalaski, MD_    Specialty: _Rheumatology_    SS No. or Tax ID No: _____

Street Address: _____    Telephone No: _____    Fax No: _____

City/State/Zip Code: _____    Signature: _Jno S. Bomalaski MD_    Date: _12/02/02_

DP 411 Rev. 02-01