UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANE DENMARK,<br><br>     Plaintiff<br><br>v.<br><br>LIBERTY MUTUAL ASSURANCE<br>COMPANY OF BOSTON, THE GENRAD,<br>INC. LONG TERM DISABILITY PLAN,<br>THROUGH TERADYNE, INC., AS<br>SUCCESSOR FIDUCIARY<br><br>     Defendants | Civil Action No. 04-12261-DPW |

## DEFENDANTS' OPPOSITION TO PLANTIFF'S MOTION TO ESTABLISH THAT LIBERTY LIFE'S DENIAL OF PLAINTIFF'S BENEFITS CLAIM IS SUBJECT TO DE NOVO REVIEW

Defendants, Liberty Life Assurance Company of Boston ("Liberty Life")[1] and The Genrad, Inc. Long Term Disability Plan, Through Teradyne, Inc., as Successor Fiduciary ("the Plan"), hereby oppose "Plaintiff's Motion to Establish Denial of Benefits Claim By Liberty Mutual Assurance Company of Boston Is Subject to the De Novo Standard of Review" ("Motion for De Novo Review") for the reasons set forth below.

### I.    INTRODUCTION

In accordance with the Scheduling Order of this Court, Defendants filed their Motion for Application of Arbitrary and Capricious Standard of Review in this case on or about February 4, 2005. Defendants refer the Court to that motion, and Defendants' arguments in support of their request for application of the "arbitrary and capricious" standard of review.

At the same time that Defendants filed their motion for application of the "arbitrary and capricious" review, Plaintiff filed her Motion for De Novo Review. Plaintiff's arguments in

---

[1] Incorrectly identified in the Complaint as Liberty Mutual Assurance Company of Boston

support of her contention that de novo review applies in this case fail for several reasons. First, the policy of insurance issued by Liberty Life to Teradyne and governing the administration of benefits to Plaintiff in this case included the appropriate discretionary language warranting an "arbitrary and capricious" standard of review. Second, the policy sufficiently granted discretionary authority to Liberty Life. Therefore, this discretionary language and the policy in which it is contained sufficiently delegate authority to Liberty Life. Third, there is no conflict of interest in this case to warrant de novo review. Contrary to Plaintiff's arguments, Liberty Life's review of Plaintiff's claim for benefits was reasonable, was based on the claims file, and in making its decision, Liberty Life relied on the opinions of qualified independent reviewing physicians and on all of the records in the claims file.

## II.    FACTUAL BACKGROUND

Plaintiff, a Group Leader in Manufacturing at Teradyne, was offered coverage under a group disability insurance plan through her employment at Teradyne. Under the plan, disability benefits were provided through a policy of insurance. Liberty Life issued the policy and is the insurer for long-term disability benefits. Teradyne is the sponsor of the policy.

In or about June, 2002, Plaintiff applied for long-term disability benefits through the policy. Plaintiff sought disability benefits on the basis that she was unable to work due to fibromyalgia, from which she allegedly suffered.

The policy under which Plaintiff seeks benefits includes a provision which defines "disability" or "disabled" as follows:

> "Disability" or "disabled" means:
>
> i.    If the Covered Person is eligible for the 24 Month Own Occupation Benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the

> Covered Person, as a result of Injury or Sickness, is unable to perform all of the Material and Substantial Duties of his Own Occupation; and
>
> ii.    Thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

On or about August 20, 2002, Liberty Life, after various reviews of Plaintiff's claims file, denied Plaintiff's request for long-term disability benefits, because she was not "disabled" as defined under the policy. This denial was based on the records in the claims file, including an independent medical review by a physician specializing in Physical Medicine and Rehabilitation, who concluded, among other things, that Plaintiff's conditions did not change significantly about the time of her alleged disability. Further, Liberty Life's decision to deny Plaintiff's request for benefits was also based on a subsequent review of Plaintiff's claims file by a reviewing nurse, who concluded that Plaintiff's limitations did not prevent her from performing the duties of her job.

After Plaintiff appealed this decision, Liberty Life conducted a further review and ultimately upheld its decision to deny benefits on or about December 10, 2002. During its review on appeal, Liberty Life requested and received an independent medical review from a physician board certified in Rheumatology. This physician concluded that the diagnosis of fibromyalgia for Plaintiff's condition was in question and that her condition did not prevent Plaintiff from working at her job, based upon the records presented. Therefore, based on the claims file and an independent medical review, the decision to deny Plaintiff's claims for benefits was upheld.

## II.    PROCEDURAL HISTORY

Plaintiff filed her Complaint on or about September 15, 2004, asserting a claim under Section 502(a) of ERISA for wrongful denial of her long-term disability benefits. Plaintiff also asserted a claim for breach of contract against Liberty Life. Defendants filed their answers to Plaintiff's Complaint on November 19, 2004, in which they denied her allegations. The Court approved the parties' Joint Statement pursuant to Local Rule 16.1(D), which included a proposed Pre-Trial Schedule and Discovery Plan. Consistent with this schedule, Liberty Life filed the administrative record with the Court on January 20, 2005. This schedule provided that the parties had to file motions regarding the applicable scope of review in this case by February 4, 2005. As such, both parties filed motions regarding the applicable scope of review. Defendants' motion seeks a review under the "arbitrary and capricious" standard of review, because the plan contained customary and appropriate discretionary language delegating authority to Liberty Life. Despite the usual and customary discretionary language in the policy, Plaintiff seeks de novo review. Defendants now file this opposition to Plaintiff's Motion for De Novo Review.

## III.    ARGUMENT

### a.    The Plan Documents Explicitly Grant Discretionary Authority To Liberty Life

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the United States Supreme Court held that "[c]onsistent with established principles of trust law, we hold that a denial of benefits under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a de novo standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan." Firestone, 489 U.S. at 115. Consistent with Firestone, the law in the First Circuit is clear that where a benefits plan grants discretionary authority to the plan administrator or fiduciary, the First Circuit Court of Appeals reviews this

- 4 -

decision to determine whether it is arbitrary and capricious. See Sullivan v. Raytheon Co., 262 F.3d 41, 50 (1st Cir. 2001), cert. denied, 534 U.S. 1118 (2002) (citing Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 418 (1st Cir. 2000) and Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998)). In this case, such discretionary language is present. The Plan expressly states, at Section 7:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

(See AR at 35.)[2] This language provides a clear grant of discretionary authority to Liberty Life by allocating to it the right to make factual findings, to determine eligibility for benefits, and/or to interpret the terms of the Plan. See Terry, 145 F.3d at 37 (holding that Plan properly granted discretionary authority to Plan Administrator, because it allocated to the Company the right to find necessary facts, determine eligibility for benefits, and interpret the terms of the Plan). As a result, Plaintiff's claim should be reviewed under the "arbitrary and capricious" standard of review.

### b.    Discretionary Authority Was Properly Delegated To Liberty Life

In this case, the plan included a policy of insurance, which delegated discretionary authority to Liberty Life. This policy, entered into by Liberty Life and Teradyne, contains the appropriate discretionary authority and it contains an express delegation of authority to Liberty Life, as discussed above. As such, under Firestone, the "arbitrary and capricious" standard of review should be applied.

---

[2] Defendants previously submitted the administrative record to the Court, which included the Policy, on or about January 20, 2005.

In her motion, Plaintiff argues that there is not a sufficient delegation of authority to Liberty Life in this case. In making this argument, Plaintiff ignores the policy itself and she miscites to certain cases on which she relies. For example, Plaintiff relies on <u>Rodriguez-Abreu v. Chase Manhattan Bank</u>, 986 F. 2d 580, 584 (1st Cir 1993), which is inapposite to the case at bar. Specifically, in <u>Rodriguez-Abreu</u>, the plan granted discretionary authority to a named fiduciary, <u>not</u> the plan administrator. <u>See Rodriquez-Abreu</u>, 986 F.2d at 584. The plan administrator, however, and not the named fiduciary, rendered the final decision on Plaintiff's claim. <u>Id.</u> As a result, the court concluded that the <u>de novo</u> standard of review should be employed "because the relevant plan documents did not grant discretionary authority to the plan administrator and the named fiduciary did not expressly delegate their discretionary authority to the plan administrator." <u>Id.</u> In essence, the court concluded that the named fiduciaries had discretionary authority and that they did not expressly delegate that authority to the plan administrator, who rendered the final decision on the Plaintiff's claim, in any plan document. Here, unlike in <u>Rodriguez-Abreu</u>, discretionary authority is granted to Liberty Life in the policy, and Liberty Life was also the final decisionmaker on Plaintiff's claim. As such, <u>Rodriguez-Abreu</u> is inapplicable to this case.

Plaintiff also miscites to <u>Davidson v. Liberty Mut. Ins. Co.</u>[3] In <u>Davidson</u>, Liberty Mutual Insurance Co. was the plan administrator and Liberty Life was designated by Liberty Mutual to administer the long-term disability plan. <u>See Davidson v. Liberty Mut. Ins. Co.</u>, 998 F.Supp. 1, 3 (D.Me. 1998). The Court found that the plan in that case vested discretionary authority in Liberty Mutual, and that there was no delegation of discretionary authority from Liberty Mutual to Liberty Life. <u>Id.</u> at 8-9. The plan provided that "[t]he Plan Administrator has the authority, in

---

[3] Plaintiff also miscites the title of the case as "<u>Davidson v. Liberty Life</u>."

its sole discretion, to construe the terms of this Plan and to determine benefit eligibility. Decisions of the Plan Administrator regarding construction of the terms of this Plan and benefit eligibility are conclusive and binding." Id. The Court held that this language was sufficient to trigger the "arbitrary and capricious" review, but that it had to apply the de novo standard because Liberty Life made the decision on the Plaintiff's claim, and the plan documents did not grant authority to Liberty Life. Id. Unlike in Davidson, the instrument under which the plan is maintained in this case, the policy of insurance, expressly provides that Liberty Life, not the plan administrator, has the discretionary authority to make decisions on claims. As such, Davidson is inapplicable to this case.

Plaintiff also cites to Guarino v. Met Life, 915 F.Supp. 435, 443 (D. Mass 1995) to support the argument that there was not a proper delegation of authority in this case. Guarino, however, does not support Plaintiff's argument, and in fact, confirms that the "arbitrary and capricious" standard of review must be applied in this case. In Guarino the Court held that the plan granted sufficient discretionary authority to the insurer through the *policy of insurance*.[4] See Guarino, 915 F.Supp. at 438, 443-444. Not only did the Court find that the policy provided discretionary authority to the insurer, but it found that the policy was a sufficient plan instrument in which to convey this authority to the insurer. Id. In the end, the Court, in Guarino, held that the "arbitrary and capricious" standard of review should be applied. Id. As such, Guarino clearly establishes that a policy of insurance is a sufficient plan instrument in which discretionary authority can be delegated to an insurer, such as in this case.

---

[4] Indeed, the language in the policy was not even as clear and direct a grant of discretionary authority as in the policy in this case. That policy stated "All proof of claim must be satisfactory to the Insurance Company." Guarino, 915 F.Supp. 443-444.

In addition, Plaintiff overlooks the fact that Courts have routinely held that the same language and delegation of authority in policies entered into by Liberty Life with other sponsors requires the application of the "arbitrary and capricious" standard of review. See Wilson v. Liberty Life, C.A. No. 03-10927-MEL, Slip Op. at 1-2, (D.Mass. 2004) (attached hereto at Exhibit A); Jellison v. Liberty Life, C.A. No. 03-11201-MEL, Slip Op. at 1 (D.Mass. 2004) (attached hereto at Exhibit B).

In sum, Plaintiff misconstrues the legal principles relating to the delegation of authority under a plan. Contrary to Plaintiff's suggestion, and as explained above, a policy of insurance, like the one in this case, is a sufficient plan instrument. In addition, the policy in this case clearly establishes a delegation of authority to Liberty Life. That policy establishes the agreement between Liberty Life and the plan sponsor, Teradyne, to the terms of the policy, which include the granting of discretionary authority to Liberty Life. As such, there is an "expression of intent" by Teradyne to delegate the discretionary authority to Liberty Life.[5]

### c.   No Conflict Of Interest Exists In This Case To Warrant De Novo Review

In her motion, Plaintiff argues that a conflict of interest exists in this case, because Liberty Life serves as plan fiduciary and pays claims out of its own assets. Based on this argument, Plaintiff contends that de novo review is necessary. In making this argument, Plaintiff miscites controlling law. Specifically, in Doe v. Travelers Ins. Co., and Doyle v. Paul Revere Life Ins. Co., the First Circuit clearly explained the "reasonableness" of the "arbitrary and capricious" standard of review. In Doe, the Court explained that it did not believe that an

---

[5] Unlike Rodriguez-Abreu in which the Court held the de novo review applied because there was no expression of intent that the plan administrator acted as the delegatee of the named fiduciary and the plan administrator did not claim to be acting on behalf of or as a delegatee of the fiduciary, there is clearly an expression of intent by Teradyne in this case to provide discretionary authority to Liberty Life. That intent is expressly evident in the agreement entered into between Liberty Life and Teradyne through the policy of insurance.

insurer's "general interest in conserving its resources is the kind of conflict that warrants de novo review." Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999). The First Circuit, in Doe, also noted that in its decision in Doyle, it "stressed the benefit of a uniform test of discretion and concluded that the mere fact that an individual claim, if paid, would cost the decisionmaker something did not show that the decision was improperly motivated." Id. Although it is true that a conflict of interest may arise, the First Circuit has clearly explained that in the situation where an insurer both decides and pays benefits, that conflict does not warrant de novo review. Id. Indeed, the First Circuit has routinely held that decisions by insurers, who are both decisionmakers and payors of benefits, are still reviewed for reasonableness under the "arbitrary and capricious" standard. See e.g. Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan, 2005 U.S.App.LEXIS 4855 (1st Cir 2005)(attached hereto at Exhibit C)(finding no conflict of interest by insurer based on fact that it was decisionmaker and payor of benefits or because of other alleged factors that the plaintiff claims evidenced an "improper motivation"); Pari-Fasano v. ITT Hartford Life & Accid. Ins. Co., 230 F.3d 415, 418-419 (1st Cir. 2000)(finding no conflict because there was no improper motivation by insurer who made decision and who paid benefits); Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999)(as explained above).[6]

In Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998), the First Circuit clearly rejected the argument that a conflict of interest triggering heightened scrutiny of a fiduciary's decision exists solely because the decisionmaker will pay benefits from its assets. In that case, the Court held that the heightened standard of review sought by the plaintiff would

---

[6] The First Circuit has also explained in Wright and Pari-Fasano that even if a conflict of interest exists, this conflict may affect the court's determination under the "arbitrary and capricious" standard, but does not require the Court to review the determination under the de novo standard of review. See Wright, 2005 U.S. App. LEXIS 4855, *14; Pari-Fasano, 230 F.3d at 419.

only apply after the claimant meets his/her burden to substantiate that the ultimate decision was improperly motivated. Doyle, 144 F.3d at 184. Plaintiff has not met this burden in this case.

While ignoring the controlling authority in the First Circuit, Plaintiff focuses attention on decisions in other circuits relating to the issue of conflict of interest. This is a merely an attempt to circumvent the controlling authority. Moreover, in an attempt to establish a conflict of interest, Plaintiff makes factual arguments regarding the review process which are inconsistent with the record and are unsupported conclusions, as discussed below.

### 1. Liberty Life Did Not Provide Inconsistent Reasons For Denying Plaintiff's Claim

Contrary to Plaintiff's allegations that Liberty Life provided inconsistent reasons for denying her claim, Liberty Life's decisions were consistent and were based on the opinions of medical experts as well as the claims file. Specifically, Plaintiff alleges that Liberty Life somehow changed its reason for denying Plaintiff's claim based on a medical report by Dr. Peter Schur, a physician who reviewed Plaintiff's claim for STD benefits. In making this argument, Plaintiff overlooks the fact that reviewing physicians may have differing opinions as to an individual's medical condition.

Here, the initial reviewing physician for Liberty Life, Dr. Clay Miller, concluded that Plaintiff's fibromyalgia was not disabling. (AR. 479-480). Subsequently, a second reviewing physician, Dr. John Bomalaski, concluded that Plaintiff's condition may not meet the criteria for fibromyalgia and that Plaintiff was not disabled from her own occupation. (AR. 331-334). Indeed, Dr. Bomalaski stated in his report that Dr. Schur even questioned the diagnosis of fibromyalgia. While Dr. Bomalaski's opinion differs from that of Dr. Schur, his opinion is consistent with Dr. Miller that Plaintiff's condition was not disabling. Moreover, any difference

in the medical opinions does not suggest that Liberty Life somehow changed the grounds on which it denied Plaintiff's benefits.

### 2. Liberty Life Relied On The Appropriate Medical Specialists In This Case

In her motion, Plaintiff completely ignores the administrative record by arguing that Liberty Life inappropriately relied on the opinion of a non-rheumatologist in reaching its decision on Plaintiff's claim for benefits. In her motion, however, Plaintiff admits that Liberty Life relied on the opinion of a rheumatologist, Dr. Bomalaski, in rendering its decision on Plaintiff's appeal.[7] Then, in a futile attempt to discredit that opinion, Plaintiff claims that Dr. Bomalaski was not provided with a complete set of medical records. However, Plaintiff fails to provide any evidence for this bald allegation. In fact, Dr. Bomalaski was provided with the records available in Plaintiff's claims file. Despite Plaintiff's insinuation, the statement from Dr. Bomalaski's report that "both physical examination and testing did not support the diagnosis of Ms. Denmark's treating physicians, at least within the records provided," does not support any allegation that Dr. Bomalaski was somehow given incomplete records to review. Dr. Bomalaski was merely noting that his opinion was based on the records that he received, not that those records were incomplete.

Moreover, Plaintiff's suggestion that Liberty Life rejected the findings of the United States Social Security Administration is absurd. In making this argument, Plaintiff ignores the fact that the Social Security Administration rendered its decision on January 31, 2004, *after* Liberty Life had rendered its final decision on Plaintiff's appeal of the denial of her claim for

---

[7] In addition, even if Liberty Life relied on the opinion of a non-rheumatologist, such as Dr. Miller, this is still reasonable. See e.g. Burchill v. Unum Life Insurance Company of America, 327 F.Supp.2d 41 (D.Me. 2004) (upholding decision to deny benefits in case involving fibromyalgia and chronic fatigue based on review by doctor of osteopathic medicine).

benefits. (AR. 293-298). As such, Liberty Life could not and did not consider that decision. In making such an argument, Plaintiff blatantly ignores the administrative record and attempts to fabricate arguments that are inconsistent with the record as a whole.[8]

### 3. Liberty Life Did Not Mislead The Plaintiff With Respect To Its Involvement In Plaintiff's Claim For Short-Term Disability Benefits

Again, Plaintiff blatantly misconstrues the administrative record by arguing that Liberty Life "pretended it did not participate in the short-term disability analysis." Contrary to Plaintiff's allegations, Liberty Life never "said that it did not take part in the decision" on Plaintiff's claim for short-term disability benefits. Liberty Life informed Plaintiff that it was only the Claims Administrator for short-term disability benefits, and that Teradyne was the final decisionmaker and was the payor of benefits. As the final decisionmaker, Teradyne, under the short-term disability plan, decided appeals on short-term disability claims. As such, because Plaintiff appealed her claim for short-term disability benefits, which was initially denied by Liberty Life, Teradyne reviewed her claim. During that review process, Teradyne requested a

---

[8] Even if the Court finds that the decision of the Social Security Administration should have been considered, controlling authority makes clear that such decisions are not binding. The First Circuit has held that "benefits eligibility determinations by the Social Security Administration are not binding on disability insurers." Pari-Fasano, 230 F.3d at 420. The Court reasoned that "[t]he criteria for determining eligibility for Social Security disability benefits are substantively different than the criteria established by many insurance plans." Id. The First Circuit reaffirmed this rationale in Leahy:

> The calculus of decision in social security cases differs significantly from that employed in ERISA cases. In the former instance, Congress and the Secretary of Health and Human Services have established a specific framework for determining disability. This framework entails specially promulgated standards, a shifted burden of persuasion, restricted discretion, and agency involvement . . . No comparable combination of factors exists in ERISA cases: there is no specially promulgated set of criteria, no shifted burden of persuasion, no restricted discretion, and no agency involvement. The fiduciary's decision is constrained only by the language of the particular plan at issue and by a judge-made judicative standard.

Leahy, 315 F.3d at 20-21 (citations omitted). Based on the standard established by the First Circuit, Liberty Life was not bound by any findings of the Social Security Administration.

review by an outside physician.    That review, conducted by Dr. Schur, was relied on by Teradyne in rendering its final decision on the appeal of the short-term disability benefits claim. Later, when making a determination on Plaintiff's claim for long-term disability benefits, Liberty Life had the opinion of Dr. Schur reviewed by a nurse and by an independent rheumatologist, who concluded that Plaintiff's condition did not meet the criteria for fibromyalgia.  This review process establishes that Liberty Life's review of Plaintiff's claim for long-term disability benefits was more than reasonable.

### 4.    Liberty Life Did Not Add Any Requirements To The Policy

In her opposition, Plaintiff contends that Liberty Life somehow added requirements of "objective evidence" that were not previously contained in the policy.   In support of this argument, Plaintiff cites to the opinion of Dr. Miller, which was provided during the review of short-term disability benefits, not the review of Plaintiff's claim for long-term disability benefits. Regardless of Dr. Miller's opinion and regardless of the recommended decision that Liberty Life provided on the short-term disability claim, Liberty Life's decision on the long-term disability claim, which is at issue in this case, never referenced a requirement for "objective evidence" of her disability.  Indeed, Dr. Bomalaski, a Rheumatologist, who subsequently reviewed the records on Plaintiff's appeal of the denial of her claim for long-term disability benefits, did not suggest that objective evidence was required.  Once again, Plaintiff ignores the issue at hand, which was her claim for long-term disability benefits, not her prior claim for short-term disability benefits.

### 5.    Any Failure of Plaintiff To Receive Documents Pursuant To The Department Of Labor Regulations Does Not Warrant De Novo Review

In her opposition, Plaintiff contends that she requested and has not received certain plan documents, which she claims must be produced pursuant to the Department of Labor regulations.

In making this argument, Plaintiff overlooks the fact that her request for such documents was received in May 2004, well after the final decision on her long-term disability benefits, which was made in December 2002. (AR. 321-322)

In addition, Plaintiff argues that her failure to receive a surveillance tape until mid-January 2005 somehow warrants a de novo review. This argument is absurd. Plaintiff's request for relevant plan documents was not received until May 2004. In response to that request, she was provided, among other things, with the claims file, policy and claims notes. (AR. 319-320) Moreover, Liberty Life subsequently provided Plaintiff with photographs from the surveillance videotape. Liberty Life was unable to locate the surveillance tape until January 2005, at which time it was provided to Plaintiff.

### 6.    Liberty Life Sufficiently Analyzed The Opinions Of Dr. Schur And Those Of Plaintiff's Treating Physicians

In her opposition, Plaintiff makes the conclusory allegation that Liberty Life ignored the opinions of Dr. Schur and of Plaintiff's treating physicians. Plaintiff argues that somehow Liberty Life relied on the opinions of reviewing physicians over examining physicians. As is clear from controlling authority, Liberty Life is not required to give extra weight to the opinions of examining physicians over reviewing physicians. The First Circuit has routinely considered the opinions of non-examining physicians in reviewing eligibility determinations. See e.g., Leahy v. Raytheon Co., 315 F.3d 11, 19-20 (1st Cir. 2002); Brigham v. Sun Life, 317 F.3d 72 (1st Cir. 2002). Further, other courts have routinely held that it is not unreasonable for a decisionmaker to rely on the opinion of a non-examining physician in reaching an eligibility determination. See Wilson v. Liberty Life, C.A. No. 03-10927-MEL, Slip Op. at 4, (D.Mass. 2004) (attached hereto at Exhibit A). See also Garcia v. Raytheon, 122 F. Supp. 2d 240, 246 (D.N.H. 2000)(citing to Green v. Metropolitan Life Ins. Co., 924 F. Supp. 351, 359 (D.R.I.

1996)(collecting cases)).  "This principle holds true even where the non-examining physician's opinion contradicts that of the examining physician." <u>Garcia</u>, 122 F.Supp. 2d at 246.

As such, Plaintiff's argument is misplaced.  Moreover, Plaintiff has provided no authority or factual support for her argument that Liberty Life selectively reviewed medical records or ignored opinions of treating physicians, or of Dr. Schur.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that this Court deny Plaintiff's Motion for De Novo Review, and that the Court apply the arbitrary and capricious standard of review, as requested in Defendants' Motion for Application of the Arbitrary and Capricious Standard of Review.

<div style="margin-left:40%">

Respectfully submitted,

LIBERTY LIFE ASSURANCE COMPANY OF
BOSTON, THE GENRAD, INC. LONG TERM
DISABILITY PLAN, THROUGH TERADYNE,
INC., AS SUCCESSOR FIDUCIARY
By their attorneys,

/s/ Richard W. Paterniti
Andrew C. Pickett, BBO# 549872
Richard W. Paterniti, BBO#645170
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

</div>

March 28, 2005

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                 )
PAMELA J. WILSON,                )
       Plaintiff,                )
                                 )
             v.                  )     03-CV-10927-MEL
                                 )
LIBERTY LIFE ASSURANCE CO.       )
OF BOSTON,                       )
       Defendant.                )
                                 )
```

## MEMORANDUM AND ORDER

LASKER, D. J.

       Pamela J. Wilson ("Wilson") brings an Employee
Retirement Income Security Act ("ERISA") action to recover long-
term disability benefits denied under an employee benefits
disability plan issued by Liberty Life Assurance Company of
Boston ("Liberty") and sponsored by Wilson's employer, Hale &
Dorr, LLP.  Wilson sought partial disability benefits on the
basis that she was unable to work full-time due to Fibromyalgia
and Chronic Fatigue Syndrome.  The parties cross-moved for
summary judgment.  For the reasons set forth below, the
plaintiff's motion for summary judgment is DENIED and the
defendant's motion for summary judgment is GRANTED.

### I.

       The standard for summary judgment in denial of benefits
cases under ERISA is: "Where a benefits plan grants discretionary

authority to the plan administrator, [the Court] review[s] the administrator's decisions to determine whether they are arbitrary and capricious." <u>Sullivan v. Raytheon Co.</u>, 262 F.3d 41, 50 (1st Cir. 2001). This standard limits the Court's power to determining whether an administrator's decision is within the administrator's authority, reasoned, and supported by substantial evidence in the record. <u>See Id.</u> at 50; <u>Pari-Fasano v. ITT Hartford Life & Accid. Ins. Co.</u>, 230 F.3d 415, 419 (1st Cir. 2000). The Court is not to substitute its judgment for that of the decisionmaker. <u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 40 (1st Cir. 1998). The claim administrator, and not the Court, has the responsibility to weigh conflicting evidence. <u>Vlass v. Raytheon Employees Disability Trust</u>, 244 F.3d 27, 32 (1st Cir. 2001). "Moreover, the existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary." <u>Id.</u> at 30.

The record in this case supports the conclusion that Liberty's decision to deny Wilson benefits was not arbitrary and capricious. Wilson's benefits claim was reviewed five separate times, including three reviews by independent physicians, each of whom determined that Wilson was not incapable of performing the material duties of her occupation on a full-time basis. Moreover, Liberty's review of Wilson's records was not so selective as to be arbitrary and capricious. <u>See, e.g., Conrad v. Reliance Standard Life Ins. Co.</u>, 292 F.Supp.2d 233 (D.Mass.

2

2003).  Although the reviewing physicians may not have
specifically addressed each symptom or medical record, their
reports adequately considered the totality of the evidence and
did not selectively parse the record in a biased attempt to
justify a denial of benefits.  Id. at 237-38 (finding of
arbitrary and capricious when the reviewing physician's
conclusions "select for emphasis just one or two elements of a
medical report, while ignoring additional facts and important
context.  Although it would certainly be permissible for a
reviewer...to summarize or condense the findings of other
doctors, it was incumbent on him to do so in an even-handed and
fair-minded manner").

     Liberty did not dismiss the opinions of Wilson's
treating physicians outright or refuse to credit them adequately.
The Supreme Court has held that while the opinions of treating
physicians are not to be ignored, they are not accorded special
deference in the ERISA context:

> Plan administrators, of course, may not refuse to
> credit a claimant's reliable evidence, including the
> opinions of a treating physician.  But, we hold, courts
> have no warrant to require administrator's to accord
> special weight to the opinions of a claimant's
> physician; nor may courts impose on plan administrators
> a discrete burden of explanation when they credit
> reliance evidence that conflicts with a treating
> physician's evaluation.  Black & Decker v. Nord, 538
> U.S. 822, 834 (2003).

At most, the diagnoses of Wilson's treating physicians establish
conflicting medical opinions, but such a conflict is an

3

insufficient basis upon which to declare Liberty's decision to have been arbitrary and capricious.  See Vlass, 244 F.3d at 30; Leahy v. Raytheon Co., 315 F.3d 11, 19 (1st Cir. 2002)("the mere existence of contradictory evidence does not render a plan fiduciary's determination arbitrary and capricious").

Finally, it was not unreasonable for Liberty to accept the opinions of non-examining physicians.  See Gannon v. Metropolitan Life Ins. Co., 360 F.3d 211, 216 (1st Cir. 2004)("our case law does not...require that the evidence relied on by a plan administrator include the opinion of an examining physician"); Ivy v. Raytheon Employees Disability Trust, 307 F.Supp.2d 301, 306 (D.Mass. 2004)("[e]ven in the face of conflicting medical evidence, it is reasonable for the claim administrator to rely on the conclusions of independent medical consultants rather than conclusions of treating physicians").

The plaintiff's motion for summary judgment is DENIED; the defendant's motion for summary judgment is GRANTED.

It is so ordered.

Dated:     November 23, 2004
           Boston, Massachusetts      /s/ Morris E. Lasker
                                            U.S.D.J.

4

# EXHIBIT B

# E N D O R S E M E N T

DEBBIE A. JELLISON v. LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
03-CV-11201-MEL

LASKER, D.J.

  Debbie Jellison ("Jellison") sues under ERISA to
recover long-term disability benefits allegedly wrongfully denied
under an employee benefits disability plan issued by Liberty Life
Assurance Co. of Boston ("Liberty"). Liberty moves for summary
judgment, contending that its determination of Jellison's claim
was appropriate under ERISA standards. Jellison cross moves for
summary judgment.

  Review of the administrative record shows that
Liberty's denial of benefits was reasonable under the deferential
arbitrary and capricious standard afforded Liberty in this case.
The record contains sufficient evidence to support Liberty's
determination that Jellison's claimed disability, Acute
Respiratory Distress Syndrome ("ARDS"), was "caused or
contributed to" by a prior medical condition, resulting in
Jellison's claim being excluded from coverage under the language
of the plan's "pre-existing condition exclusion" clause. (AR 41).

  The record establishes that Jellison suffered from
abdominal pain for several years, and had been receiving
treatment for the condition in the months prior to her effective
date of coverage under Liberty's plan. The record further shows
that Jellison's ARDS condition resulted as a post-operative
complication of the June 24, 2002 surgery undertaken to treat her
abdominal condition of endometriosis and adhesion; that ARDS is a
known risk of abdominal surgery; and that Jellison had previously
developed ARDS post-operatively from a prior abdominal surgery.
(AR 63 ¶5; 368 ¶3). Thus, it was plausible, and certainly not
arbitrary or capricious, for Liberty to construe Jellison's ARDS
as "caused or contributed to" by her pre-existing abdominal
condition.

  The record also establishes that Liberty provided a
full and fair review of Jellison's benefits application. Two
separate reviews of Jellison's claim file were conducted, which
included an appeal by Jellison (who was represented by counsel)
where she presented arguments and supplemented her medical
record. An independent medical assessment of Jellison's claim
file was made by a physician consultant, who produced a report
with specific findings. Liberty considered the medical evidence
presented in its determination to deny benefits.



1

The record does not permit a finding that Liberty's decision was unreasonable or improper under ERISA standards.

Accordingly, Liberty's motion for summary judgment is GRANTED. Jellison's motion is DENIED. The complaint is dismissed.

It is so ordered.

Dated:    June 9, 2004
          Boston, Massachusetts      /s/ Morris E. Lasker
                                          U.S.D.J.

2

# EXHIBIT C

LEXSEE

**MICHAEL J.M. WRIGHT, Plaintiff, Appellant, v. R. R. DONNELLEY & SONS CO. GROUP BENEFITS PLAN, et al., Defendants, Appellees.**

No. 04-1986

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

*2005 U.S. App. LEXIS 4855*

**March 25, 2005, Decided**

**PRIOR HISTORY:** [*1] APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE. [Hon. Paul J. Barbadoro, U.S. District Judge].

**DISPOSITION:** AFFIRMED.

**COUNSEL:** Stephen L. Raymond, for appellant.

John-Mark Turner, with Sheehan, Phinney, Bass + Green, P.A., on brief, for appellees.

**JUDGES:** Before Torruella, Circuit Judge, Stahl, Senior Circuit Judge, and Oberdorfer, * Senior District Judge.

* Of the District of the District of Columbia, sitting by designation.

**OPINIONBY:** OBERDORFER

**OPINION:**

**OBERDORFER, Senior District Judge.** Plaintiff-appellant, Michael J. M. Wright, appeals the district court's entry of summary judgment in favor of defendants-appellees, R. R. Donnelley & Sons Co. Group Benefits Plan, and Hartford Life and Accident Insurance Company ("Hartford"). Wright alleged that Hartford's termination of his short-term disability benefits, and its failure to grant his long-term disability benefits, violated the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § § 1001*-1461. For the reasons stated below, we affirm.

    I. BACKGROUND

A. The Plan

In connection with his employment with financial services firm R. R. Donnelley & Sons [*2] Company ("Donnelley"), Wright was covered as a participant under Donnelley's Group Benefits Plan (the "Plan"). Benefits under the short term disability ("STD") portion of the Plan are administered by Hartford and funded by Donnelley through a trust. App. at A150. Benefits under the long term disability ("LTD") portion of the Plan are administered by Hartford and funded in full by an insurance policy issued by Hartford. Id. The Plan states that, "Hartford has sole authority to approve or reject claims according to the program rules, and follow through with the ERISA appeals process." Id. at A147. Benefits are not payable unless, among other requirements, an employee submits "proof of loss satisfactory to The Hartford." Id. at A170.

B. Wright's Application for STD Benefits

On June 19, 2001, Wright took a medical leave from work, claiming he was suffering from headaches and irregular memory loss which prevented him from carrying out his job functions. See App. at A111-A113. Wright subsequently applied for STD benefits in accordance with the Plan's provisions. Id. at A207. Wright submitted Attending Physician Statements ("APS") from his primary care physician, [*3] Dr. Maurice B. Cohen, and his psychologist, Ron Michaud, Ph.D. See id. at A188-89; id. at A210-11. Both Drs. Michaud and Cohen reported that Wright's subjective symptoms were memory problems. See id. at A188-89; id. at A210-11. Dr. Cohen recommended that Wright be kept out of work pending the results of neuropsychological testing. Id. at A210-11. Dr. Michaud indicated that Wright's ability for sustained concentration "has severely impaired current job performance." Id. at A210-11. He declined to indicate any specific psychiatric impairments, stating that it was unclear if the "process is psychiatric or neurological." Id. Based on this information, Hartford granted Wright's STD benefits through July 29, 2001. Id. at A379. Pending results of the neuropsychological testing, Hartford extended Wright's STD benefits through August 20, 2001. Id. at A380.

In a status report to Hartford, on August 20, 2001, Dr. Cohen diagnosed Wright with memory loss and indicated the necessity of additional neurological testing. See id. at A198-99. Dr. Cohen again recommended that Wright not return to work until an appropriate diagnosis was made. Id. By letter [*4] dated August 24, 2001, Hartford notified Wright that it was extending his STD benefits through September 23, 2001. Id. at A381. The letter further stated:

> If you remain disabled beyond September 23, 2001, your physician must submit supporting medical information to our office. This must include the specific results of your July 11 and August 28, 2001 tests. We will also require an evaluation by your primary care physician that addresses a specific diagnosis, restrictions and limitations that prevent you from returning to work, your treatment plan and any changes in your treatment, and a return to work plan.

Id.

On September 20, 2001, Dr. Cohen provided another update to Hartford, explaining that Wright had difficulty finding a neuropsychologist covered by his health insurance but finally was able to schedule an appointment with Dr. Ann Avery for October 2, 2001. n1 Id. at A248. Based on this information, Hartford extended STD benefits until October 14, 2001, to allow time for his physicians to review the results of Dr. Avery's testing. See id. at A196.

     n1 Wright also submitted a letter to Hartford detailing his attempts to obtain formal testing and indicating that his health carrier refused to approve full neuropsychological testing, allowing Wright only an "initial set of tests." Id. at A208-09.

[*5]

On October 15, 2001, after reviewing the results of Dr. Avery's neuropsychological assessment of Wright, Dr. Cohen submitted a new APS to Hartford, which addressed for the first time the level of Wright's psychiatric impairments. See id. at A190-91. Dr. Cohen indicated an impairment of less severe than "moderate impairment in occupational functioning" but more severe than "slight difficulty." Id. Dr. Cohen also telephoned Hartford and explained Dr. Avery's tests showed that Wright's "short term memory is good" but that Wright had "weakness recalling long term events and narratives [sic]." n2 Id. at A193. Dr. Cohen further reported that an MRI was normal and there was no diagnosis for Wright yet. Id. at A193. Hartford extended Wright's STD benefits until October 28, 2001, pending the results of Wright's examination by a new psychiatrist, Dr. Clive D. Dalby.

     n2 According to Dr. Avery's findings, Wright's memory was generally good, though he had a below average score on a single sub-test of delayed recall. Id. at A223.

[*6]

On October 26, 2001, Dr. Dalby submitted an APS to Hartford diagnosing Wright with Amnestic Syndrome Not Otherwise Specified. Id. at A212-13. Dr. Dalby indicated that Wright suffered "severe short term memory loss & thought blocking," and described this as causing a "moderate impairment in occupational functioning," but did not specify such limitation. Id.

**C. Wright's Application for LTD Benefits**

Wright applied for LTD benefits on November 13, 2001. Meanwhile, Hartford referred Wright's STD claim to one of its Behavioral Health Case Managers for review. The Case Manager noted that "the only thing we have with all of these tests that were reportedly done is [Wright's] self-reported memory loss . . . . There are not one impairment [sic] noted and the info doesn't indicate how severe or mild that memory loss is as substantiated by neuropsychological testing." Id. at A282-83.

Concluding that there was no sufficient medical evidence of the severity of Wright's reported symptoms or any occupational limitations, Hartford denied Wright's STD benefits effective October 28, 2001. See id. at A185-87. On the same day, Hartford denied Wright's LTD claim, because [*7] its conclusion that Wright was not prevented from performing his job meant that one prerequisite under the LTD portion of the Plan (disability throughout the 26-week elimination period) was not satisfied. See id. at A214-16. In its denial letters, Hartford specifically invited Wright to submit "test results and reports which document deficits in short term memory and how it affects your occupational functioning beyond October 28, 2001." See id. at A185-87; id. at A214-16.

**D. Wright's First Appeal**

On December 3, 2001, Wright appealed Hartford's initial denial. See id. at A384-89. Wright provided explanatory statements by himself and his wife as well as the Neuropsychological Assessment of Dr. Avery dated October 2, 2001 and a December 6, 2001 letter of Dr. Dalby, indicating Dr. Dalby's conclusion that Wright was disabled from performing his occupation. See id.; id. at A222-24; id. at A220-21. Hartford considered this additional evidence, as well as a job description submitted by Wright's employer. See id. at A217-19. By letter dated March 12, 2002, Hartford reaffirmed its denial, claiming that the documents submitted did not provide any medical [*8] evidence regarding the severity of any cognitive deficits suffered by Wright and, thus, did not establish any specific occupational limitations. Id. at A218. Hartford found the "results of the neuropsychological testing is [sic] consistent with an ability to perform the essential duties of [Wright's] occupation." Id.

**E. Wright's Second Appeal**

Wright filed a second appeal on June 3, 2002, in which he submitted an APS from a new neurologist, Dr. Bryan Lieberman. See id. at A285-326. Dr. Lieberman diagnosed Wright with sleep apnea and memory disorder. See id. at A355-56. In describing Wright's cognitive deficit, Dr. Lieberman termed it a "neurologic cognitive disorder" including impaired memory, attention, and executive function, as well as daytime somnolence, and fatigue. Id. Dr. Lieberman concluded that the "above deficit disables [Wright] for his job--working as a software engineer." Id.

Hartford referred Wright's entire file to two Independent Medical Examiners at the University Disability Consortium for review--Dr. Alvin McElveen, Neurologist, and Milton Jay, Ed.D, Neuropsychologist. Upon review of Wright's case file, Dr. McElveen concluded [*9] that sleep apnea had been documented; thus the medical evidence "supported cognitive impairment as a result of the physical conditions present on 10/28/2001." Dr. McElveen referred to Dr. Jay's report for an assessment of the effect of any impairments on Wright's cognitive functioning. Id. at A351. Dr. Jay concluded that, although sleep apnea had been confirmed by a polysomnogram ordered by Dr. Lieberman, the medical evidence did not confirm that the apnea was causing even "mild difficulties in cognition secondary to interrupted sleep and subsequent fatigue." Id. at A338.

Based on the opinions of Drs. Jay and McElveen, the additional medical records from Drs. Cohen and Lieberman, the information submitted by Wright in his appeal, and all the other information already in the claim file, Hartford reiterated its denial on October 2, 2002. Hartford reasoned that even assuming minor cognitive difficulties existed, none were severe enough to prevent Wright from performing the essential functions of his occupation. See id. at A352-54.

**F. District Court**

Wright filed suit in the United States District Court for the District of New Hampshire on June 10, 2003. Wright [*10] claimed that Hartford acted under an inherent conflict of interest because it both administered and funded the LTD benefits. Wright also alleged that Hartford acted under an actual conflict of interest, evidenced by its bad faith in handling Wright's claims for STD and LTD benefits. Hartford's conflict of interest, according to Wright, required a less deferential review of Hartford's denial of Wright's benefits. Furthermore, even under deferential arbitrary and capricious review, according to Wright, Hartford's denials of STD and LTD benefits were not based upon substantial evidence, reasonably sufficient to support Hartford's decisions. Defendants filed a Motion for Summary Judgment on February 4,

2004, and Wright filed a cross Motion for Summary Judgment on March 8, 2004. After extensive oral argument, the district court granted Defendants' Motion for Summary Judgment and denied Wright's Motion for Summary Judgment on June 17, 2004. The district court considered but rejected Wright's claim that Hartford acted out of an improper financial motivation. The court similarly rejected Wright's other arguments for heightened scrutiny of Hartford's decisions. Applying the arbitrary and capricious [*11] standard of review, the district court found that, despite some contradictory evidence, substantial evidence existed to support Hartford's decision that any cognitive deficits were minor and not disabling. The court entered a Final Judgment on June 18, 2004. Wright filed a timely Notice of Appeal on July 14, 2004.

## II. DISCUSSION

### A. Standard of Review

The Court reviews a district court's grant of summary judgment *de novo*. See *Boardman v. Prudential Ins. Co. of Am., 337 F.3d 9, 15 (1st Cir. 2003)*. The district court generally reviews an ERISA plan administrator's benefits determinations *de novo*. *Allen v. Adage, Inc., 967 F.2d 695, 697-98 (1st Cir. 1992)*. If, however, by its terms, the ERISA plan grants the plan administrator discretionary authority in the determination of eligibility for benefits, the administrator's decision must be upheld unless it is "arbitrary, capricious, or an abuse of discretion." n3 *Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183 (1st Cir. 1998)*.

> n3 For purposes of reviewing benefit determinations by an ERISA plan administrator, the arbitrary and capricious standard is functionally equivalent to the abuse of discretion standard. See *Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 320 F.3d 415, 419 (1st Cir. 2000)*. We refer to the relevant standard as "abuse of discretion review."

[*12]

The operative inquiry under arbitrary, capricious or abuse of discretion review is "whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." *Twomey v. Delta Airlines Pension Plan, 328 F.3d 27, 31 (1st Cir. 2003)* (citing *Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002)*). A decision to deny benefits to a beneficiary will be upheld if the administrator's decision "[was] reasoned and supported by substantial evidence." *Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004)*; see also *Boardman, 337 F.3d at 15* (holding that a district court can "overturn [an administrator's] termination decision only if 'the insurer's eligibility determination was unreasonable in light of the information available to it'")(internal citation omitted). Evidence is substantial when it is "reasonably sufficient to support a conclusion." Id. Evidence contrary to an administrator's decision does not make the decision unreasonable, provided substantial evidence supports [*13] the decision. See *Gannon, 360 F.3d at 213*; see also *Doyle, 144 F.3d at 184* ("Sufficiency, of course, does not disappear merely by reason of contradictory evidence.").

In applying the arbitrary and capricious standard, however, the existence of a conflict of interest on the part of the administrator is a factor which must be considered. *Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L. Ed. 2d 80 (1989)*. In this Circuit, if a court concludes there is an improper motivation amounting to a conflict of interest, the court "may cede a diminished degree of deference--or no deference at all--to the administrator's determinations." *Leahy, 315 F.3d at 16*. However, "[a] chimerical, imagined, or conjectural conflict will not strip the fiduciary's determination of the deference that otherwise would be due." n4 Id. If no conflict of interest is apparent, a court must proceed to ensure that the decision was not objectively unreasonable in light of the available evidence, recognizing that the existence of a potential conflict of interest will affect the court's determination of what was reasonable conduct by [*14] the insurer under the circumstances. *Pari-Fasano, 230 F.3d at 419*.

> n4 The burden is on the claimant, here Wright, to demonstrate a conflict of interest. *Pari-Fasano, 230 F.3d at 418*.

Here, there is no dispute that the Plan confers discretion on the Plan Administrator. See App. at A147. The parties disagree, however, as to whether Hartford labored under a conflict of interest. Thus, before addressing the substantive

2005 U.S. App. LEXIS 4855, *

merits of the district court's decision, it is necessary to determine whether there was a conflict of interest, such that the district court should have considered this as a factor in its arbitrary and capricious review.

### B. Conflict of Interest

Wright argues that Hartford labored under a conflict of interest, as evidenced by (1) its dual status as payor of benefits and administrator with respect to the LTD benefits and (2) other factors that Wright claims evidence an "improper motivation."

Upon a *de novo* review of the evidence, we conclude that [*15] the district court properly rejected Wright's claims that Hartford acted under a conflict of interest.

#### 1. Conflict Based on Status

Turning first to Wright's structural conflict of interest claim, the district court concluded that, although Hartford clearly had a financial incentive to maximize profits with respect to the LTD Plan, which it fully insured, the potential that it would deny claims based on self-interest was not alone sufficient to alter the standard of review. See App. at A89. Under the law of this Circuit, "the fact that [] the plan administrator[] will have to pay [the plaintiff's] claim[] out of its own assets does not change [the arbitrary and capricious] standard of review." *Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 125-26 (1st Cir. 2004)* (noting that simply because a plan administrator has to pay a claim does not deprive the administrator of discretion when the terms of the plan grant discretion); see also *Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999); Doyle, 144 F.3d at 184.*

In Pari-Fasano, the Court acknowledged that an insurer "does have a conflict of sorts when [*16] a finding of eligibility means that the insurer will have to pay benefits out of its own pocket," but determined that the market presents competing incentives that substantially minimize the apparent conflict of interest. *230 F.3d at 418.* In Doyle, the Court identified the competing incentives, explaining that employers have benefit plans to please employees and, consequently, will not want to keep an overly tight-fisted insurer. *144 F.3d at 184.* Thus, according to the Court, an insurer could "hardly sell policies if it is too severe in administering them." *Doe, 167 F.3d at 57.*

Wright acknowledges this precedent but argues that the rationale relied upon in these decisions overstates the ability of market forces to minimize the apparent conflict. The district court similarly was troubled by what it deemed the "false premise" that an ERISA plan administrator that also has a financial stake in the benefit decisions can act as a disinterested trustee. Bound by well-established precedent, however, the court properly declined to apply a less deferential standard due to the alleged structural conflict. n5

n5 We also are bound by decisions of prior panels of this Circuit, absent an opinion by the Supreme Court, an *en banc* opinion of the Circuit or statutory overruling. See *Iguarta-De La Rosa v. United States, 386 F.3d 313, 313 (1st Cir. 2004).* We are nevertheless mindful that other circuits have rejected the market forces rationale and specifically recognized a conflict of interest when the insurer of an ERISA plan also serves as plan administrator, although there is no consistent approach in accordingly adjusting the standard of review. See, e.g., *Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997 (10th Cir. 2004)* (holding that plan administrators acting under an inherent conflict of interest have the burden of showing that their decision to deny disability benefits is supported by substantial evidence); *Davolt v. Executive Comm. of O'Reilly Auto., 206 F.3d 806, 809 (8th Cir. 2000)* (noting that *de novo* review may apply where "relationship places the ERISA benefits plan administrator in a perpetual conflict of interest"); *Atwood v. Newmont Gold Co., 45 F.3d 1317, 1323 (9th Cir. 1995)* (presuming conflict and shifting burden of proof to insurer); *Brown v. Blue Cross & Blue Shield of Ala., Inc., 898 F.2d 1556, 1566-67 (11th Cir. 1990)* (adopting sliding scale approach); *Pinto v. Reliance Standard Life Ins. Co, 214 F.3d 377, 393 (3rd Cir. 2000)* (same); *Doe v. Group Hospitalization & Med. Serv., 3 F.3d 80, 87 (4th Cir. 1993)* (same); *Wildbur v. ARCO Chem. Co., 974 F.2d 631, 638-42 (5th Cir. 1992)* (same); *Van Boxel v. Journal Co. Employees' Pension Trust, 836 F.2d 1048, 1052-53 (7th Cir. 1987)* (same).

[*17]

#### 2. Conflict Based on Improper Motivation

Having rejected Wright's structural conflict of interest argument, the district court turned to an examination of Wright's claims that Hartford was improperly motivated, see *Doyle, 144 F.3d at 184,* finding each unpersuasive. On

appeal, Wright claims that the district court erred in failing to find a conflict of interest on the part of Hartford based on: (1) the timing of the benefit denial, coming immediately before Hartford would be financially exposed under the LTD plan; (2) the fact that the medical evidence supporting Wright's claim was never reviewed by a physician prior to Hartford's denial of the STD and LTD claims on November 29, 2001; (3) the fact that the same examiner made both the STD and LTD benefit determinations; (4) the fact that Hartford did not have a copy of Wright's job description prior to its denial of STD and LTD benefits on November 29, 2001; and (5) Hartford's refusal to fulfill Wright's requests for certain documentary evidence concerning his claim.

### a. Timing of Denial of STD and LTD Benefits

Wright claims that the timing of the rejection of both his STD and LTD benefits---as the LTD **[*18]** benefit date was approaching---demonstrated an actual conflict of interest. According to Wright, Hartford granted STD benefits to Wright when it did not have a financial stake in the payment of benefits and then denied benefits to Wright as the time approached when Hartford would be financially liable. After a thorough review of the evidence, however, the district court found that it was apparent that the decision to terminate benefits was based on the evolving state of plaintiff's medical record. This conclusion was amply supported by the evidence.

Hartford granted Wright's STD benefits beginning on June 27, 2001. See App. at A379. Hartford extended the STD benefits until August 20, 2001, after being informed by Plaintiff's primary care physician, Dr. Cohen, that Wright had undergone or would be undergoing neuropsychological testing shortly. See id. at A189; id. at A201; id. at A380. During the summer and fall of 2001, no test results were provided to Hartford. Hartford, nevertheless, extended STD benefits to September 23, then to October 14, and finally to October 28, 2001, based on Dr. Cohen's statements that Wright should not return to work until the results of **[*19]** neuropsychological testing were known. See id. at A189; id. at A197; id. at A248. During that time, Hartford consistently informed Wright that it was awaiting the results of neuropsychological testing that would document the severity of his self-reported memory loss. See id. at A192-A200. Following Dr. Avery's Neuropsychological Assessment on October 2, 2001, Dr. Cohen submitted an APS, indicating a level of impairment below that of "limited in performing some occupational duties." Id. at A191. Dr. Cohen additionally reported to Hartford that the tests showed that "short term memory is good" but that Wright had some "weakness recalling long term events and narratives [sic]." See id. at A193. Dr. Cohen indicated that Wright's MRI was normal. See id. Dr. Dalby submitted an APS shortly thereafter, stating that Wright suffered "severe short term memory loss." This finding directly contradicted the neuropsychological test results, as reported by Dr. Cohen. See id. at A213.

Wright, thus, did not present a consistent diagnosis or opinion on functional limitation. Hartford's decision to deny further benefits was reasonably based on evidence indicating that **[*20]** Wright did not suffer the limitations in performing his essential job functions that would qualify him for the disability benefits. The timing of the denial of benefits did not evidence an improper motivation on the part of Hartford, amounting to a conflict of interest.

### b. Denial of Benefits Initially Made Without Review by Physician

Wright argues that Hartford did not have a physician review his medical record before denying his STD and LTD claims on November 29, 2001, evidencing that the decisions were based on an actual conflict of interest. The district court properly rejected this argument.

As Appellees indicate, courts have not required that an ERISA claimant's medical records always be independently verified by medical doctors as a prerequisite to a benefit determination. See generally *Brigham v. Sun Life, 317 F.3d 72, 85 (1st Cir. 2003)* (concluding administrator not required to conduct independent medical evaluation when treating physician's reports supported finding of no disability).

Here, it is clear that the plan administrator reviewed the documentation submitted by Wright's primary care physician, Dr. Cohen, who opined in his APS that Wright's **[*21]** symptoms were not so severe as to prevent him from performing occupational functions. See App. at A245. Hartford was not acting in bad faith, or under an improper motivation, in relying on Dr. Cohen's conclusions to deny benefits to Wright without an independent medical evaluation.

### c. Use of Same Examiner for STD and LTD Benefit Determinations

Wright argues that the same claims examiner denied both the STD and LTD claims, thus indicating that there was no "independence between Hartford's STD and LTD departments." Appellant's Br. at 28. The district court correctly determined that the fact that the same examiner made both LTD and STD benefits determinations did not demonstrate a conflict of interest.

There are no statutory or regulatory provisions under ERISA requiring independence, and Wright cites to no authority indicating that such an overlap makes benefits decisions suspect. Furthermore, it is clear that the claims administrator reviewed the medical evidence submitted by Wright and based the benefits determination largely on the conclusions of Wright's own physician, Dr. Cohen. See App. at A245.

### d. Hartford Did Not have a Copy of Wright's Job Description Before  [*22]  Denying Benefits

Wright claims that Hartford's failure to obtain a copy of his job description before denying benefits on November 29, 2001 evidences Hartford's bad faith. The district court properly rejected this argument.

It was Wright's burden to provide evidence that he was unable to perform the duties of his occupation. See *Boardman, 337 F.3d at 16.* An integral part of that evidence would be a statement of what his job required. Wright never submitted such a statement. Instead, Hartford actively sought out and obtained a copy of Wright's job description during the review process. n6 See App. at A102-103.

> n6 Wright also contends that Hartford's criticism of Dr. Dalby's conclusion that Wright was disabled from performing his job because Dr. Dalby was not aware of Wright's job description evidenced Hartford's improper motivation. Although Dr. Dalby indicated to Hartford that he was aware that Wright's job required giving presentations, see App. at A273, the district court properly found no indication of bad faith in Hartford's concern about Dr. Dalby's lack of information about the specific requirements of the occupation for which Wright claimed disability.

[*23]

### e. Hartford's Refusal to Fulfill Wright's Requests for Certain Documentary Evidence

Wright claims that Hartford declined to provide him with a transcript of a telephone conversation between them, and with a copy of the Summary Detail Report--which contained summaries of Hartford's communications with Wright, his doctors, and among examiners--despite his written requests. Hartford responds that it did provide one requested telephone transcript and that a second one was requested for an occasion when, in fact, only a recorded message had been left on Wright's voicemail. As for the Summary Detail Report, Hartford indicates that the substance thereof was either already known to Wright, or was communicated to him in letters, telephone conversations and copies of his claim file from Hartford.

It appears that Hartford did provide adequate documentary evidence to Wright, and we decline to interpret the omission of the Summary Detail Report as an indication of bad faith.

Wright, thus, failed to establish any improper motivations on the part of Hartford, amounting to a conflict of interest. Accordingly, the district court properly reviewed the substantive merits of Wright's claims [*24]  under an arbitrary and capricious standard.

## C. Review of Denial of Wright's STD and LTD Claims

Wright argues that even under the deferential arbitrary and capricious standard Hartford's denial of Wright's STD and LTD benefits was not supported by substantial evidence. Specifically, Wright claims that Dr. Lieberman's diagnosis of sleep apnea, along with his opinion that Wright was totally disabled, "cannot reasonably be diminished by any other evidence in Mr. Wright's file." Appellant's Br. at 32.

The district court found that there was not substantial disagreement that Wright suffered from sleep apnea or that Wright's memory was generally average or above, except for some limited areas--causing some impairment to his cognitive capacities. See App. at A93. The district court noted, however, that based on the entire medical record there was disagreement among all the physicians (including Wright's treating physicians and Hartford's independent medical examiners) as to the extent of the impairment and the impact on Wright's ability to perform his essential job functions. Id.; see *Matias-Correa v. Pfizer, Inc., 345 F.3d 7, 12 (1st Cir. 2003)* (noting [*25]  that it is not the court's role to evaluate how much weight an insurer should have accorded the opinion of an independent medical consultant relative to the opinions of a claimant's own physicians). The district court reasoned that although there was conflicting medical evidence, there was sufficient evidence that Wright's impairments were minor and not disabling according to the STD

2005 U.S. App. LEXIS 4855, *

and LTD Plan provisions. Id.; see also *Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001)* ("The existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary.").

Mindful of the deferential nature of arbitrary and capricious or abuse of discretion review, we conclude that the district court properly granted summary judgment in favor of the defendants.

### III. CONCLUSION

For the reasons set forth above, we agree with the lower court's conclusion that the termination of Wright's STD benefits and denial of Wright's LTD benefits, as a matter of law, did not violate ERISA. We therefore affirm the summary judgment dismissing Wright's action.

AFFIRMED.