UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIANE DENMARK,

Plaintiff

v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, THE GENRAD, INC. LONG TERM DISABILITY PLAN, THROUGH TERADYNE, INC., AS SUCCESSOR FIDUCIARY

Defendants

Civil Action No. 04-12261-DPW

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE RECORD**

Defendants, Liberty Life Assurance Company of Boston ("Liberty Life") and The Genrad, Inc. Long Term Disability Plan, Through Teradyne, Inc., as Successor Fiduciary ("the Plan"), hereby oppose Plaintiff's Motion To Complete Record On Review ("Motion to Supplement the Record") for the reasons set forth below.[1]

## I. INTRODUCTION

On or about September 15, 2004, Plaintiff filed this action after her application for long-term disability benefits was denied. She has brought a claim in this case under ERISA, 29 U.S.C. §1132, contending that Liberty Life's decision to deny these benefits was unreasonable. The decision to deny Plaintiff's request for benefits, however, was more than reasonable based on the information before Liberty Life. In this case, the relevant policy contained the appropriate

[1] Plaintiff's motion is brought against both Defendants. However, the review of Plaintiff's claim was conducted by Liberty Life and the Plan was not involved in the compilation of the record. To the extent that the Plan was involved, it refers the Court to the arguments in this opposition.

discretionary language requiring the Court to review this case under the "arbitrary and capricious" standard of review, as opposed to a de novo standard of review.

Plaintiff now moves to supplement the administrative record by adding documents well beyond the confines of the administrative record. Specifically, Plaintiff seeks to add materials to the record which were obtained during discovery. She seeks to add records relating to the relationship between Network Medical Review – Elite Physicians, Ltd. ("NMR") and Liberty Life from January 1, 2002 to the present, as well as claims procedures. Plaintiff's request to add these documents to the record should be denied, because these materials are not relevant in this straightforward ERISA denial of benefits case. The Court should limit its review of Liberty Life's decision to the administrative record that was before Liberty Life at the time that it rendered its decision. That administrative record has already been produced to Plaintiff and filed with the Court. Plaintiff's request should also be denied because Plaintiff has failed to provide sufficient explanation as to why these materials should be admitted in this case.[2]

## II. FACTUAL BACKGROUND

In or about June, 2002, Plaintiff applied for long-term disability benefits through a policy of insurance administered by Liberty Life and sponsored by Plaintiff's employer, Genrad, Inc.[3]

[2] Plaintiff's motion to supplement the administrative record should also be denied on the grounds that it is untimely, as it was filed more than three months after the deadline for filing such motions had passed. The parties' Joint Statement Pursuant to Local Rule 16.1(D) provided that Plaintiff was required to file any motion to add documents to the administrative record on or before February 4, 2005. Plaintiff agreed to the Joint Statement, and the Court approved the Joint Statement on or about December 9, 2004. Plaintiff, however, did not file her Motion to Supplement the Record until May 20, 2005, more than three months after the deadline to file such a motion had passed. To the extent that Plaintiff contends that she could not file this motion until she received the discovery she requested from Liberty Life, her argument fails because she could have, but did not, either file her motion for discovery earlier and/or request a new deadline for this motion on a date after she obtained discovery. Accordingly, Plaintiff's motion is untimely and the Court should deny the motion.

[3] Genrad, Inc. was acquired by Teradyne, Inc.

Plaintiff, a Group Leader in Manufacturing at Genrad, sought disability benefits on the basis that she was allegedly unable to work due to fibromyalgia, from which she allegedly suffered.

The policy under which Plaintiff seeks benefits includes a provision which defines "disability" or "disabled" as follows:

> "Disability" or "disabled" means:
>
> i. If the Covered Person is eligible for the 24 Month Own Occupation Benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform all of the Material and Substantial Duties of his Own Occupation; and
>
> ii. Thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

On or about August 20, 2002, Liberty Life, after various reviews of Plaintiff's claims file, denied Plaintiff's request for long-term disability benefits, because she was not disabled as defined under the policy. This denial was based on the records in the claims file, including an independent medical review by a physician specializing in Physical Medicine and Rehabilitation, who concluded, among other things, that Plaintiff's conditions did not change significantly about the time of her alleged disability. Further, Liberty Life's decision to deny Plaintiff's request for benefits was also based on subsequent reviews of Plaintiff's claims file by a registered nurse, who concluded that Plaintiff's limitations did not prevent her from performing the duties of her job.

After Plaintiff appealed this decision, Liberty Life conducted a further review and ultimately upheld its decision to deny benefits on or about December 10, 2002. During its review on appeal, Liberty Life requested and received an independent medical review from a

physician board certified in Rheumatology. This physician concluded that the diagnosis of fibromyalgia for Plaintiff's condition was in question and that her condition did not prevent Plaintiff from working full-time at her job based upon the records presented. The review also included a vocational assessment, labor market survey, and surveillance of Plaintiff's activities. Therefore, based on the entire claims file and the independent medical review, the decision to deny Plaintiff's claims for benefits was upheld.[4]

## III. PROCEDURAL HISTORY

Plaintiff filed her complaint on or about September 15, 2004, asserting a claim under Section 502(a) of ERISA for wrongful denial of her long-term disability benefits. Plaintiff also asserted a claim for breach of contract against Liberty Life. Defendants filed their answers to Plaintiff's Complaint on November 19, 2004, in which they denied the allegations. The Court approved the parties' Joint Statement Pursuant to Local Rule 16.1(D), which included a Proposed Pre-Trial Schedule and Discovery Plan. Consistent with this schedule, Liberty Life filed the administrative record with the Court on January 20, 2005. This schedule provided that if Plaintiff sought to add materials to the record, she had to file a motion with the Court by February 4, 2005. Plaintiff subsequently filed the instant motion to add materials to the record on May 20, 2005, more than three months after the deadline to file such a motion.

## IV. SUMMARY OF ARGUMENT

Plaintiff's request to supplement the administrative record should be denied for several reasons. First, Liberty Life's decision to deny Plaintiff's request for benefits will be reviewed

[4] In her motion, Plaintiff suggests that her claim was improperly denied because Liberty Life did not properly consider the decision by the United States Social Security Administration. Contrary to her contention, Liberty Life was not required to consider that decision. The decision from SSA was not rendered until January 31, 2004, more than two years after Liberty Life's final decision on Plaintiff's appeal. In addition, the decision of SSA is not binding on Liberty Life. See, e.g., Smith v. Fortis Benefits Ins. Co., 2003 U.S. App. LEXIS 20777 (1st Cir. 2003).

under the "arbitrary and capricious" standard. Therefore, the Court is limited to the record that was before Liberty Life at the time that it made its decision. In addition, the information or documents received during discovery are not relevant to the decision rendered in this case.

Plaintiff has also failed to present a reasonable basis for her need to add materials to the record. Indeed, Plaintiff has merely made blanket and overbroad statements regarding Liberty Life's claims procedures and regarding the documents relating to the financial relationship between NMR and Liberty Life, but has failed to provide sufficient explanation as to why these materials are relevant. Likewise, Plaintiff has failed to show the relevance of the claims procedures to the Court's review of Liberty Life's determination. In addition and contrary to her own assertions, Plaintiff has failed to show any inconsistencies in the record to warrant a need for these materials.

The decision to deny Plaintiff's application for benefits was based on the claims file and the opinions of the reviewing physicians and nurses. Those documents are part of the administrative record that has already been produced. As a result, no additional documents should be included as part of the Court's review of this claim.

## V. ARGUMENT

### A. Plaintiff's Motion Should Be Denied Because This Case Will Be Decided Under The "Arbitrary And Capricious" Standard of Review

In matters governed by ERISA, the standard of review directly impacts the scope of admissible evidence that may be considered by the Court. In turn, the scope of relevant evidence determines the appropriate scope of discovery to be engaged in by the parties. In this case, the applicable standard of review -- arbitrary and capricious/abuse of discretion -- mandates that the Court limit its review to the evidence presented to, and considered by, Liberty Life in making its determination. Therefore, discovery into matters beyond verification of relevant plan documents

and of the actual administrative record – as it stood at the time of the final determination – is irrelevant to the claims or defenses of any party and, accordingly, should be prohibited by the Court. For the same reasons, the Court also should reject any attempts to submit any evidence outside the administrative record and plan documents for purposes of trial or summary judgment.

### 1. Liberty Life's Determination of Plaintiff's Eligibility for Benefits Will Be Reviewed Under The "Arbitrary and Capricious" Standard

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the United States Supreme Court held that "[c]onsistent with established principles of trust law, we hold that a denial of benefits under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan." Firestone, 489 U.S. at 115. The law in the First Circuit is clear: "[w]here a benefits plan grants discretionary authority to the plan administrator, [the First Circuit Court of Appeals] review[s] this administrator's decisions to determine whether they are arbitrary and capricious." Sullivan v. Raytheon Co., 262 F.3d 41, 50 (1st Cir. 2001), cert. denied, 534 U.S. 1118 (2002) (citing Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 418 (1st Cir. 2000) and Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998)). As explained in Defendants' motion regarding the scope of review in this case, such discretionary language is present. The Plan expressly states, at Section 7:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

Such language provides a clear grant of discretionary authority to Liberty Life, by allocating to it the right to make factual findings, to determine eligibility for benefits, and/or to interpret the

terms of the Plan. See Terry, 145 F.3d at 37 (holding that Plan in that case properly granted discretionary authority to Plan Administrator, because it allocated to the Company the right to find necessary facts, determine eligibility for benefits, and interpret the terms of the Plan).[5]

The "arbitrary and capricious" standard requires this Court to determine only whether a deciding administrator's decision is plausible in light of the record as a whole, or, put another way, whether the decision is within the administrator's authority, reasoned and supported by substantial evidence on the record, that is, evidence reasonably sufficient to support a conclusion. See Sullivan, 262 F.3d at 50; Pari-Fasano, 230 F.3d at 419.

### 2. The Scope of Admissible Evidence Is Limited to the Administrative Record and Relevant Plan Documents

Under the arbitrary and capricious/abuse of discretion standard, it is well-settled that this Court's review of the denial of Plaintiff's claim for benefits is limited to the information available to, and considered by, Liberty Life at the time of the denial. See Doe v. Travelers Ins. Co., 167 F.3d 53, 58 and n. 3 (1st Cir. 1999); Jorstad v. Connecticut Gen. Life Ins. Co., 844 F.Supp. 46, 56 (D.Mass. 1994)[6]. It is also well-settled that accepting additional documents outside of the administrative record would "eviscerate the abuse of discretion standard, and in any case, is only justifiable where the decision itself was unreasonable or outside of an express grant of discretion. . ." Downey v. Aetna Life Ins. Co./ U.S. Healthcare, 2003 U.S. Dist. LEXIS

[5] Although the Court declined to rule on the standard of review at the April 4, 2005 hearing, the Court also indicated that it would likely apply the "arbitrary and capricious" standard of review in this matter:

> "I suspect that I will go off on an arbitrary and capricious standard. I suspect that I won't be using a de novo standard. . . . I would say it's a 95 chance that this is going to be an arbitrary and capricious review."

Transcript from April 4, 2005 Hearing, pp. 3, 13. (Attached as Exhibit A.)

[6] See also Heller v. Fortis Benefits Ins. Co., 142 F.3d 487, 493 (D.C. Cir. 1998), cert. denied, 525 U.S. 930 ("Courts review ERISA-plan benefit decisions on the evidence presented to the plan administrators, not on a record later made in another forum.") (citing Block v. Pitney Bowes, Inc., 952 F.2d 1450, 1455 (D.C. Cir. 1992); Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995) (where plan provides discretionary authority, evidence is limited to that before the decisionmaker at the time of its decision)).

8150, *38 (D.Mass. May 12, 2003) (Woodlock, J.).

The principle behind the rule that the Court's review is limited to the information available to Liberty Life at the time of its decision is not designed to create a stumbling block for ERISA participants and beneficiaries. Rather, it is a matter of carefully designed public policy intended to prevent the "transfer [of] the administration of benefit and pension plans from their designated fiduciaries to the federal bench." Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 and n.4 (4th Cir. 1985); see also Brown v. Seitz Foods, Inc. Disability Benefits Plan, 140 F.3d 1198, 1200 (8th Cir. 1998) (citations omitted) ("additional evidence gathering is ruled out on deferential review, and discouraged on de novo review to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators"). In addition, a primary goal of ERISA was "to provide a method for workers and beneficiaries to resolve disputes over benefits *inexpensively and expeditiously*." Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1472 (9th Cir. 1993)(citations omitted)(emphasis supplied).

Here, Plaintiff attempts to circumvent this primary goal of inexpensive and expeditious resolution by relying on specific cases in which Plaintiff alleges the courts allowed supplementation of the administrative record. As discussed below, Plaintiff mischaracterizes the holdings in several of those cases. In addition, the decisions in those cases are fact-specific, and those facts are distinguishable from the case at bar.

**a. Even When Courts Allow Discovery in Cases Such As This, Courts Do Not Necessarily Allow A Party To Supplement The Administrative Record**

A court's allowance of discovery in an action such as this does not equate to a ruling that the requesting party can supplement the administrative record by adding the evidence obtained

during discovery. See Anderson v. Sotheby's Inc. Severance Plan, 2005 U.S. Dist. LEXIS 9033 (S.D.N.Y. May 13, 2005); Allison v. UNUM Life Ins. Co., 2005 U.S. Dist. LEXIS 3465 (E.D.N.Y. Feb. 11, 2005). Indeed, it is only upon a motion to supplement the record, that a court will consider the relevance of the proffered documents and determine whether to allow supplementation to the administrative record. As the Allison Court noted, "the decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence." Allison, 2005 U.S. Dist. LEXIS 3465 at *34. Plaintiff cannot add to the administrative record here simply because the Court allowed her to engage in limited discovery.

Because a court's allowance of "discovery is not tantamount to a ruling that the information gleaned from discovery will be considered by the court," Plaintiff is required to show that expansion of the administrative record is necessary in this case. See Allison, 2005 U.S. Dist. LEXIS 3465 at *40. Expansion of the administrative record, however, is generally unnecessary, because "courts should be able to determine whether an administrator acted arbitrarily or capriciously by examining the administrative record." Fowler v. Williams Cos., 2005 U.S. Dist. LEXIS 5025 (W.D.Wis. Mar. 25, 2005) (holding that plaintiff could argue that defendant acted arbitrarily and capriciously by relying on a peer review report, but could not expand the record to add new documents even though the court allowed limited discovery); see also Myers v. Bridgestone/Firestone Long-Term Disability Benefits Plan, 2004 U.S. Dist. LEXIS 13047 (E.D.Tenn. June 17, 2004) (allowing plaintiff limited discovery related to allegations of bias, conflicts of interest, and denial of due process against plan administrators and holding that "plaintiff will not be entitled to supplement the record with matters that are irrelevant"). In Fowler, the court allowed the plaintiff's request to engage in discovery, but held that the plaintiff could not add to the administrative record because he had not suggested that defendant had

disregarded his application for long-term disability benefits. See 2005 U.S. LEXIS 5025 at *6.

Plaintiff cannot rely on the Court's granting of her motion for limited discovery as a basis for supplementing the administrative record. Instead, Plaintiff must present valid reasons why the documents she wishes to add to the administrative record are relevant and necessary for the Court's review of this case. As discussed below, Plaintiff has not made the required showing.

**b. Plaintiff Has Failed To Rebut The First Circuit's Strong Presumption Against Supplementing the Administrative Record**

There is a strong presumption in the First Circuit that a review of a denial of benefits for arbitrariness is based "on the record made before the entity being reviewed." Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003).[7] "[T]he party seeking to supplement the record bears the burden of establishing why the district court should exercise its discretion to admit particular evidence by showing how that evidence is necessary" to the court's review. Steiner v. Hartford Life & Accident Ins., 2004 U.S. Dist. LEXIS 20022 at *11 (N.D.Cal. June 4, 2004). Although the First Circuit has not adopted an "ironclad rule" against new evidence, a party must proffer "at least some very good reason to overcome the strong presumption that the record on review is limited to the record before the administrator." Liston, 330 F.3d at 23. As this Court has aptly noted, resorting to extrinsic evidence "would eviscerate the abuse of discretion standard" and "is only justifiable where the decision itself was unreasonable or outside of an express grant of discretion." Downey, 2003 U.S. Dist. LEXIS 8150 at *38. Plaintiff has not met her burden and, thus, the Court should deny her motion.

---

[7] Further, the Liston court noted that "even where de novo review exists under ERISA, it is at least doubtful that courts should be in a hurry to consider evidence or claims not presented to the plan administrator." 330 F.3d at 23-24 (citations omitted).

### i. <u>Plaintiff Has Not Shown That The Claim Procedures Are Relevant To Liberty Life's Denial of Benefits</u>

Plaintiff has not made the required showing that Liberty Life's claims procedures should be part of the record on review in this case. Although Plaintiff is required to present a "very good reason" for supplementing the administrative record, Plaintiff has only vaguely asserted that adding the claims procedures is necessary "to assure fairness" and to show "the arbitrariness of Liberty's benefit decision." Pl. Mot. To Complete Record on Review, at 4-5. Significantly, Plaintiff has failed to explain how the claims procedures will assist the Court in its review of Liberty Life's determination or ensure fairness in the Court's review. Further, Plaintiff has utterly failed to articulate the relevance of the guidelines to the Court's review.

Plaintiff baldly asserts that the claims procedures should be added to the record to assure fairness. In support of this contention, Plaintiff seems to argue that these procedures will somehow show an "absence of any meaningful claims" procedures and that they will somehow shed light on the training of the "insurance company employees" who decided Plaintiff's claim. Both arguments are not only confusing, but they fail because the claims procedures are irrelevant to the specific decision rendered on Plaintiff's claim.

Contrary to Plaintiff's insinuations, the alleged lack of certain claims procedures that Plaintiff believes should be present is irrelevant to Plaintiff's claim and does not show that Liberty Life's decision was somehow unreasonable. Liberty Life's claims procedures are more than appropriate and Plaintiff does not identify a particular claims procedure that is absent. In addition, the training and experience of Liberty Life's employees is not at issue in this case. These employees relied on, among other things, the expert opinions of specialists, such as a vocational expert, two independent physicians, and a nurse, as well as surveillance in deciding

Plaintiff's claim. The independent reviewing physicians and nurse each concluded that Plaintiff was not disabled. The surveillance showed that Plaintiff was far more active than she claimed. Finally, the vocational review confirmed that Plaintiff could perform the duties of her job. As a result, the claims procedures are irrelevant to the reasonableness of the decision in this case.

Plaintiff also relies on Glista v. UNUM Life Ins. Co. of Am., 378 F.3d 113 (1st Cir. 2004), to support her argument that the Court should allow her to supplement the record by adding the claims guidelines. The First Circuit's opinion in Glista, however, is inapplicable here. In Glista, the plaintiff sought to include specific guidelines and training materials the defendant used to train its decision makers regarding a pre-existing condition exclusion. See Glista, 378 F.3d at 115. While the First Circuit determined that certain manuals and training material were relevant and admissible, the Court limited the impact of its decision by "declin[ing] to adopt [a] hard-and-fast[] rule[] as to" whether the manuals and training material were admissible. Id. at 115. The Court acknowledged that "[t]he weight and admissibility of internal documents, whether those documents are offered in support of the interpretation of the plan administrator or that of the claimant, will vary with the facts of each case." Id. at 123. Significantly, in deciding that such materials were admissible, the Court based its decision upon the finding that the materials were relevant to the interpretation of a specific clause in the policy relating to pre-existing conditions. Id. at 124.

Contrary to Plaintiff's assertions, it is clear that Glista does not require that the Court allow Plaintiff to supplement the record in this case. In Glista, the plaintiff disputed the interpretation of the policy's pre-existing condition clause. Id. at 115. This dispute was based entirely on the interpretation of the clause, not the facts of the case or diagnosis of the plaintiff's condition. Here, Plaintiff disputes Liberty Life's evaluation of her medical condition. Liberty

Life's evaluation was based on the opinions of the reviewing physicians and nurses, not necessarily on an interpretation of a policy provision. Indeed, the First Circuit itself noted this distinction in Glista when it explained that "[t]he documents [in the Glista case] shed light on the 'legal' rule the Plan applies, not the underlying facts presented to the Administrator." See Glista, 378 F.3d at 122-123.

Moreover, Courts have routinely denied the addition of claims procedures to the administrative record. See Wilson v. Liberty Life Assurance Company of Boston, D. Mass., C.A. No. 03-10927-MEL (June 4, 2004) (attached as Exhibit B) (denying discovery requests for internal manuals referencing or interpreting plan provisions and relating to review of claims, and requests relating to reviewing physicians because Plaintiff failed to show good cause or materiality of information requested). See also Steiner, 2004 U.S. Dist. LEXIS 20022 (denying discovery requests relating to bias of consulting physicians and relating to claims manuals).

In summary, Plaintiff has not presented a "very good reason" to add the claims procedures to the administrative record. Glista does not hold that all claims procedures are admissible. Moreover, unlike in Glista, this case does involve a dispute of an interpretation of a policy provision, but involves a dispute over the opinions of various physicians regarding Plaintiff's ability to work. Accordingly, the Court should deny Plaintiff's motion to add the claims procedures to the administrative record.

**ii. Plaintiff Has Not Shown That Liberty Life's Relationship With NMR Is Relevant To Liberty Life's Denial of Benefits**

Plaintiff has also failed to make the required showing that documents relating to Liberty Life's relationship with NMR should be considered part of the record on review in this case. Instead of presenting a "very good reason" for supplementing the administrative record, Plaintiff has merely asserted, without any support for the assertion, that one of the independent physicians

who reviewed Plaintiff's claims file was biased based upon "his cursory review of the file and rejection of the findings of [Plaintiff's] treating physician and . . . Dr. Schur." Pl. Mot. To Complete Record on Review, at 5. Plaintiff also points to a flawed statistic in her attempt to demonstrate the significance of the documents related to Liberty Life's relationship with NMR and makes an unfounded claim that NMR has not found in favor of a single claimant in connection with its reviews of Liberty Life's claims. Pl. Mot. To Complete Record on Review, at 6-7. As with the claims procedures, Plaintiff has failed to explain how the documents related to Liberty Life's working relationship with NMR will assist the Court in its review of Liberty Life's determination.

Plaintiff's claim that the independent physicians who reviewed Plaintiff's file were biased and her claim that NMR is in the business of "supporting claim denials for insurance companies, not . . . fully and fairly reviewing claims files" are bald assertions that this Court should not countenance. Plaintiff has not offered any basis for these assertions other than the unsupported allegation that the reviews were "cursory," and the mere fact that Liberty Life compensates NMR for completing reviews of claims files and preparing reports based upon those reviews.

Contrary to Plaintiff's claims, the independent reviewing physicians considered all of the records in the claims file at the time of their reviews. Plaintiff's contention that these physicians rejected the opinions of the treating physicians or of Dr. Schur is unsupported and, in fact, is inconsistent with the record. Indeed, Dr. Bomalaski specifically referenced Dr. Schur's opinions in his report. In addition, that Liberty Life pays NMR to complete reviews of claims files and prepare reports based upon the reviews simply does not lead to an inference of bias, as suggested

by Plaintiff.[8]

Further, Plaintiff's claim that NMR is biased based upon 51 reported cases in which NMR physicians allegedly found that the claimant was not disabled is a fatally flawed and meaningless statistic. Obviously, denial of benefits cases typically involve a medical reviewer's finding that a claimant is not disabled. It is likewise obvious that in cases where medical reviewers find otherwise, there generally is no denial of benefits issue to litigate. This statistical information on which Plaintiff relies in support of her claim that NMR is biased is therefore meaningless. Moreover, Plaintiff's assertion that NMR has not found in favor of a single claimant in connection with a Liberty Life claim is unsupported by any evidence. Liberty Life explained in its response to Plaintiff's interrogatories that it was unable to provide the number of claims accepted or granted after a review by NMR because to do so would require manually reviewing over 1200 claims files. However, this does not lead one to conclude, as Plaintiff claims, that NMR has never found in favor of a claimant in connection with a Liberty Life claim.

The single case, Darland v. Fortis Benefits Ins. Co., 317 F.3d 516 (6th Cir. 2003), cited by Plaintiff as evidence that a court has reviewed a claim of bias of reviewing physicians is not helpful to Plaintiff. Darland was decided before the Supreme Court's ruling in Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003) and the Court in Darland applied legal principles, such as the treating physician rule, which were later over-ruled by Nord. Because the decision in that case was based on legal rules that have since been over-turned, the Darland case is inapplicable to the case at bar. In addition, the Supreme Court in Nord analyzed this issue of

---

[8] Plaintiff also argues that the records relating to Liberty Life's relationship with NMR are relevant to show how to review a claim with "more bite." Plaintiff, however, overlooks the fact that the Court has indicated that it intends to apply the arbitrary and capricious standard of review. As such, this argument is misplaced. Moreover, in focusing on the relationship between NMR and Liberty Life, Plaintiff ignores the fact that Dr. Bomalaski, not NMR, reviewed Plaintiff's file. Dr. Bomalaski, a board certified Rheumatologist, is subject to ethical and professional guidelines. While Plaintiff has offered no evidence that NMR had a conflict of interest, she has not even alleged, nor offered any evidence to show Dr. Bomalaski had a conflict of interest, because no such evidence exists.

possible bias by reviewing physicians based on their relationship with the plan. In its decision, the Court rejected the "treating physician rule" because while a physician "repeatedly retained by benefits plans may have an incentive to make a finding of not disabled," a treating physician may also have an incentive "to favor a finding of 'disabled.'" See Nord, 538 U.S. at 832. As such, courts have already considered the possible competing incentives and biases of reviewing and treating physicians and have declined to draw an inference of bias on behalf of one party over another. Id. Therefore, the documents relating to NMR serve no additional value in this case. Indeed, while Plaintiff attempts to make much of the alleged bias of NMR, she says nothing about the potential bias of her own physicians.

Moreover, Plaintiff's claim regarding NMR's alleged bias is irrelevant and, thus, Plaintiff should not be permitted to add documents relating to the business relationship between Liberty Life and NMR to the record. See Abromitis v. Continental Casualty Co., 2004 U.S. App. LEXIS 23310 at **9 (4th Cir. Nov. 5, 2004) (denying motion to compel because it was "irrelevant how much business [the claims administrator] provided to [the individual who provided labor market survey]"); Steiner, 2004 U.S. LEXIS at *14 (denying motion to compel discovery of amount of business between claims administrator and its physician-consultants sought by plaintiff to show bias because plaintiff offered no exceptional circumstances to justify extra-record discovery); Abram v. Cargill, Inc., 2003 U.S. Dist. LEXIS 7027 (D. Minn. Feb. 10, 2003), rev'd on other grounds, 395 F.3d 882 (8th Cir. 2005) (denying motion to compel deposition of physician who performed independent medical exam sought by plaintiff to prove bias of physician because plaintiff offered only speculation and bald assertions to support claim of bias).

Plaintiff's reference to a recent case from the Eleventh Circuit, Potter v. Liberty Life Assurance Co. of Boston, 2005 U.S. App. LEXIS 8926 (11th Cir. May 18, 2005), is inapplicable

here. In Potter, the court applied a heightened arbitrary and capricious standard of review, which required the defendant to show that its determination was not "tainted by self-interest," due to the fact that the defendant was responsible for paying claims and determining the validity of claims. The First Circuit, noting a disagreement among the circuit courts on this issue, recently reaffirmed it has declined to apply a less deferential standard due to an alleged structural conflict of interest in these types of cases. See Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan, 402 F.3d 67 (1st Cir. 2005).

As such, Plaintiff has not met her burden to add documents relating to the relationship between NMR and Liberty Life to the administrative record. Plaintiff's assertions as to NMR's bias are marred by their questionable logic. Despite her claims, the mere fact that Liberty Life compensates NMR for the work of its physicians in reviewing claims files and in preparing reviews of the files does not lead to an automatic inference of bias, just as the First Circuit declined to infer bias simply because the same entity is responsible for determining eligibility and paying benefits. See Wright, supra. Further, Plaintiff has not even attempted to make a legitimate showing of bias in this particular case. Accordingly, the Court should deny Plaintiff's motion to add the documents obtained during discovery relating to Liberty Life's business relationship with NMR to the administrative record.

**CONCLUSION**

For all the foregoing reasons, Plaintiff's Motion To Complete Record On Review should be denied.

Respectfully submitted,

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, THE GENRAD, INC. LONG TERM DISABILITY PLAN, THROUGH TERADYNE, INC., AS SUCCESSOR FIDUCIARY
By their attorneys,

/s/Richard W. Paterniti

Andrew C. Pickett, BBO# 549872
Richard W. Paterniti, BBO#645170
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

June 3, 2005