UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIANE DENMARK,

     Plaintiff

v.

LIBERTY LIFE ASSURANCE COMPANY OF
BOSTON, THE GENRAD, INC. LONG TERM
DISABILITY PLAN, THROUGH
TERADYNE, INC., AS SUCCESSOR
FIDUCIARY

     Defendants

Civil Action No. 04-12261-DPW

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants, Liberty Life Assurance Company of Boston ("Liberty Life") and The Genrad Inc. Long Term Disability Plan, through Teradyne, Inc., as Successor Fiduciary ("The Plan"), hereby submit their opposition to Plaintiff's Motion for Summary Judgment. Defendants moved for summary judgment as to both counts of Plaintiff's Complaint, because Liberty Life did not arbitrarily and capriciously to deny Plaintiff's claim for long-term disability ("LTD") benefits.[1] At the same time, Plaintiff also moved for summary judgment.[2] Defendants now submit their opposition to Plaintiff's motion for summary judgment.

For the reasons set forth in Defendants' initial statement of undisputed material facts and memorandum of law in support of their motion for summary judgment, as well as for the reasons

---

[1] As previously explained, Liberty Life made the decision to deny Plaintiff's claim for long-term disability benefits. Therefore, Plaintiff's claims are not properly brought against The Plan. To the extent that The Plan must respond to Plaintiff's allegations, it joins in this opposition with Liberty Life.

[2] In her Complaint, Plaintiff brought two counts – one for denial of benefits under the Employment Retirement Income Security Act ("ERISA"), and another for breach of contract. In her motion for summary judgment, Plaintiff did not include any arguments or discussion regarding her breach of contract claim and, therefore, it appears she is not pursuing that claim. As a result, Defendant requests that this Court dismiss that claim.

set forth below, Defendants' Motion for Summary Judgment should be granted and Plaintiff's

Motion for Summary Judgment should be denied. Liberty Life is entitled to the "arbitrary and

capricious" standard of review in this case, and the administrative record establishes that Liberty

Life's decision to deny LTD benefits to Plaintiff was reasonable.

## ARGUMENT

I.    **Liberty Life's Decision Should Be Reviewed Under the "Arbitrary and Capricious"**
      **Standard of Review**

Liberty Life incorporates by reference its arguments from its motion and memorandum

dated February 4, 2005 for application of the "arbitrary and capricious" standard of review and

its opposition dated March 28, 2005 to Plaintiff's motion regarding scope of review.   As

explained in Liberty Life's memorandum in support of its motion for summary judgment, this

Court indicated at a hearing on the motions concerning the applicable scope of review that it

would likely apply the "arbitrary and capricious" standard of review in this matter:   "I suspect

that I will go off on an arbitrary and capricious standard.   I suspect that I won't be using a de

novo standard . . . . I would say it's a 95 chance that this is going to be an arbitrary and

capricious review."   Transcript from April 4, 2005 Hearing, pp. 3, 13.   (Attached as Exhibit A).

As such, this Court should apply the deferential "arbitrary and capricious" standard of review in

this case.

II.   **Liberty Life's Decision To Deny Long-Term Disability Benefits to Plaintiff Was**
      **Reasonable**

In her motion for summary judgment, Plaintiff argues that the decision by Liberty Life to

deny her LTD benefits was somehow unreasonable.   In making this argument, Plaintiff makes

conclusory and unsupported allegations in which she either ignores the administrative record or

selectively reviews only portions of the record.   Plaintiff fails to show that the decision reached

by Liberty Life on her appeal of the denial of her LTD benefits was not based on "evidence

reasonably sufficient to support (its) conclusion." Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 419 (1st Cir. 2000).

Specifically, Plaintiff's entire case is based on her attempts to discredit the findings of independent medical reviews, who concluded that Plaintiff was not disabled as defined under The Plan. She also relies on selected records from the administrative record to raise the specter that this Court should overturn as unreasonable Liberty Life's determination, because the administrative record may contain some potentially conflicting evidence. Yet Plaintiff ignores and/or distorts key facts in the administrative record. For instance, in arguing that Liberty Life did not consider the decision of the Social Security Administration ("SSA"), Plaintiff simply fails to acknowledge that that decision was rendered more than 13 months *after* Liberty Life's final decision on Plaintiff's appeal of the denial of her claim for LTD benefits.[3]   Plaintiff's attempt to overturn Liberty Life's decision also fails because the First Circuit has clearly held that instances of potentially contradictory evidence in the record do not, by themselves, make the administrator's decision arbitrary. See Vlass v. Raytheon Employee's Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001); Sullivan v. Raytheon Co., 262 F.3d 41, 52, n.8 (1st Cir. 2001).

At foundation, Plaintiff's arguments in her motion fail, because Liberty Life's decision to deny Plaintiff's claim for LTD benefits was reasonable and was supported by substantial evidence in the record. The claims file included four separate medical reviews, two of which were conducted by independent reviewing physicians. Both of the independent reviewing physicians reviewed all of Plaintiff's medical records that were in the administrative record at the time of the review and concluded that Plaintiff was not disabled from her employment. As a

---

[3] The SSA decision is only included in the administrative record because Plaintiff or her attorney submitted the decision to Liberty Life almost two years after the decision, but before filing this lawsuit. As a result, Liberty Life immediately notified Plaintiff's counsel that the SSA decision was not binding and would not be considered. (AR at 319).

result, Liberty Life acted reasonably in its determination to deny Plaintiff's claim for disability benefits and its motion for summary judgment should be granted.

### A.    The Claims File Supports Liberty Life's Decision

In her memorandum in support of her motion for summary judgment, Plaintiff argues that the administrative record does not support Liberty Life's decision in this case. Contrary to Plaintiff's assertion, the administrative record contains substantial evidence to support Liberty Life's decision to deny Plaintiff's claim. As part of its review of Plaintiff's claim, Liberty Life obtained two separate reports from independent reviewing physicians, who each concluded that Plaintiff was not disabled, surveillance of Plaintiff's activities, a vocational review, including a labor market survey, and other medical reviews from a reviewing nurse. Based on these records, which are part of the administrative record, it was more than reasonable for Liberty Life to conclude that Plaintiff did not qualify for disability benefits under The Plan.

### 1.    The Independent Opinions of The Reviewing Physicians Supports Liberty Life's Determination In This Case

Plaintiff contends that the opinions of Dr. John Bomalaski and Dr. Clay Miller, the independent physicians who concluded that Plaintiff's condition did not prevent her from returning to her work, were somehow unreasonable and were inconsistent with the administrative record. Plaintiff's argument fails, however, because Plaintiff mischaracterizes the administrative record.

### a.    The Reviewing Physicians Considered The Records Relating to Plaintiff's Treatment

Contrary to Plaintiff's contention, Dr. Bomalaski and Dr. Miller did not "reject[] the opinions" of the physicians who treated Plaintiff and whose records they reviewed. Dr. Bomalaski and Dr. Miller reviewed all of the records that were part of the administrative record at the time of their respective reviews. Indeed, these reviewing physicians referenced the

4

conclusions and findings of the treating physicians in their reports. Moreover, as explained below, the findings of Judge Carter from the SSA, and the opinions of Joseph Goodman, a vocational consultant who testified at the SSA hearing, were not rendered and/or made available until after Liberty Life had made its final determination on Plaintiff's appeal of her claim for LTD benefits. Throughout her brief Plaintiff inexplicably chooses to ignore this basic fact that these opinions were simply not available to the reviewing physicians or to Liberty Life until after a decision was reached on Plaintiff's claim.

          **b.**     **Dr. Bomalaski's Opinion Was Consistent With The Administrative Record**

      Plaintiff also mischaracterizes Dr. Bomalaski's opinion. In arguing that Dr. Bomalaski did not explain why he did not agree with the other physicians' opinions, Plaintiff ignores Dr. Bomalaski's report, in which he noted that other possible diagnoses for Plaintiff's symptoms had not been ruled out by other physicians. (AR at 361-362). Dr. Bomalaski also noted that testing for such issues as a rheumatoid factor was suggested by Dr. Schur, but had not been done. In addition, he pointed out that Dr. Schur questioned the diagnosis of Plaintiff's condition and identified other possible diagnoses. Dr. Bomalaski's conclusion that there is a need for testing to rule out these conditions simply does not mean that Dr. Bomalaski required objective evidence to substantiate the fibromyalgia diagnosis, as Plaintiff suggests. Testing was merely needed, according to Dr. Bomalaski, to rule out other diagnoses suggested by Dr. Schur. (AR at 361-362).

      In a further misplaced effort to discredit Dr. Bomalaski's opinion, Plaintiff alleges that Dr. Bomalaski's opinion regarding Plaintiff's ability to lift certain amounts of weight required by her occupation and her limited ability to engage in repetitive motions undermines Liberty Life's determination in this case. Specifically, she alleges that the Functional Capacity Form

completed by Dr. Bomalaski shows that Plaintiff "could not do what was required of the occupation" as described in the Genrad job description or the OASYS job description. Plaintiff, however, ignores the vocational review in the administrative record. The vocational review, which included an evaluation of the job descriptions from Genrad and the OASYS Occupational Description, along with information provided by seven different employers in the local labor market, concluded that the physical demands of Plaintiff's occupation required "Occasional lifting up to 20 pounds." (AR at 375). Consistent with this description, Dr. Bomalaski opined that Plaintiff could lift up to 20 lbs. occasionally. (AR at 364). Similarly, the vocational consultant concluded that Plaintiff's job required "occasional to frequent use of the hands." (AR at 375). Consistent with this finding, Dr. Bomalaski opined that Plaintiff could engage in similar activities occasionally. (AR at 364).

Plaintiff also misconstrues the administrative record as it relates to the general description of the physical demands of Plaintiff's job. Specifically, she alleges that the records indicate that her occupation was "either medium or light duty, but not sedentary." However, Plaintiff completely ignores the vocational consultant's findings that the physical demands of the job were considered "sedentary to light work with occasional standing, walking and bending." (AR at 376).

In arguing that Dr. Bomalaski's opinion is somehow inconsistent with the record, Plaintiff also ignores the fact that her own treating physicians failed to indicate any restrictions relating to her ability to lift. Indeed, in response to Dr. Miller's report, Dr. Goodman merely opined that Plaintiff was unable to perform her job duties "as she is unable to be on her feet for the amount of time it takes to perform her job adequately." (AR at 449). He failed to mention any restrictions related to lifting. Similarly, Dr. Malanoski, when completing the Restrictions

Form, indicated that restrictions were "not determined." (AR at 555) As such, Dr. Bomalaski's opinion was consistent with the requirements identified for Plaintiff's occupation. To the extent that there is contradictory evidence in the claims file relating to Plaintiff's job description or job requirements, such evidence does not make the decision unreasonable.

### c.    The Hawkins Case Is Inapplicable To The Case At Bar

To support her arguments relating to the reviews by Dr. Bomalaski and Dr. Miller, Plaintiff relies heavily on a Seventh Circuit case, Hawkins v. First Union Corporation Long-Term Disability Plan, 326 F.3d 914 (7th Cir. 2003).    That case, however, is not only from a different jurisdiction, but is plainly distinguishable from the case at bar. In Hawkins, the Seventh Circuit held that the defendant did not present sufficient evidence to support its decision to deny benefits. See Hawkins, 326 F.3d at 919. In that case, the plan concluded that because the plaintiff worked when she had fibromylagia, she was not disabled later on. The plan also concluded that the plaintiff was not disabled, because she indicated in an activities questionnaire that she had been taking classes in an effort to become a Web designer. Id. at 916, 918. The Court found that the opinion of the reviewing physician, which was the only other evidence relied on by the plan other than the questionnaire, was problematic, because the physician made vague conclusions and because he placed a greater emphasis on the need for objective evidence of pain. Id. at 918-919. The Court noted that the diagnosis of fibromyalgia was not questioned, and the plan did not argue, as it could have, that the activities in which the plaintiff engaged as described in the questionnaire she completed were inconsistent with the level of activity described by her treating physician, presumably based on the plaintiff's representations. Id. at 916-919.

Unlike in <u>Hawkins</u>, there is substantial evidence in the administrative file in this case to support Liberty Life's decision, including four medical reviews, a surveillance report and videotape, and a vocational review. In addition, unlike the defendant in <u>Hawkins</u>, Liberty Life submits that the activities questionnaire completed by Plaintiff is undermined by the videotape surveillance of Plaintiff's activities, which in turn undermines her credibility. The surveillance revealed that Plaintiff was capable of running errands, including grocery shopping, up to three hours at a time and could drive a car up to 20 minutes at a time, despite her representations in her activities questionnaire that she could not do the grocery shopping and that she could only drive a car for five minutes at a time. (AR at 369-371). Indeed, in <u>Hawkins</u>, the Court noted that evidence such as this surveillance would "fatally undermine[] [a plaintiff's] credibility." 326 F.3d at 918.

Moreover, unlike in <u>Hawkins</u>, the diagnosis of fibromyalgia is in question in this case, as explained by Dr. Bomalaski. (AR at 333). In addition, Dr. Bomalaski's opinion, unlike the reviewing physician's opinion in <u>Hawkins</u>, focuses on Plaintiff's specific condition and Plaintiff's physical capabilities as they relate to her job. The record also reveals that Dr. Bomalaski did not place an improper emphasis on the need for objective evidence, and he considered the opinions of Plaintiff's treating physicians. (AR 331-334).

### d.    Liberty Life Was Not Required to Rely on the Opinions of Examining Physicians

Plaintiff also incorrectly suggests that it was improper for Liberty Life to rely on the opinions of Dr. Bomalaski and Dr. Miller, because they did not personally examine Plaintiff. Contrary to Plaintiff's assertion, it was not unreasonable for Liberty Life to rely on the opinions of non-examining physicians. See <u>Gannon v. Metropolitan Life Insurance Company</u>, 360 F.3d 211 (1st Cir. 2004)(holding that the plan administrator may rely on the assessment of a non-

examining medical consultant and stating that the First Circuit has "treated a nonexamining physician's review of a claimant's file as reliable medical evidence on several occasions."); McLaughlin v. The Prudential Life Insurance Company of America, 319 F.Supp.2d 115 (D.Mass. 2004) (same). See also Ivy v. Raytheon Employees Disability Trust, 307 F.Supp.2d 301 (D.Mass. 2004) (finding benefits determination was not arbitrary and capricious when the defendant relied upon opinions of independent non-examining physicians).

Indeed, this Court confirmed this principle in its recent decision in DePardo v. MFS/Sun Life Financial Distributors, Inc., 2005 U.S. Dist. LEXIS 9777 (D. Mass. 2005) (Woodlock, J.). In that decision, the Court noted that while the doctors relied upon by Sun Life did not personally examine the plaintiff, this does not require deference to the treating physician. (citations omitted).

### 2.    It Is Well Settled That The Findings of the SSA Are Not Binding In A Case Such As This

In her memorandum, Plaintiff also argues that the decision of the SSA should be binding on Liberty Life. Plaintiff's argument fails, because the SSA's decision is not binding on Liberty Life under First Circuit law.[4]

### a.    SSA Findings Are Not Binding Under First Circuit Precedent

The First Circuit Court of Appeals has clearly explained that the decision of the SSA is not binding on a decisionmaker such as Liberty Life. See Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000); Smith v. Fortis Benefits Ins. Co., 2003 U.S. App. LEXIS 20777 (1st Cir. 2003). Plaintiff's argument that the SSA is binding fails based on this precedent.

---

[4] The SSA decision is also not binding because, as explained previously, it was rendered on January 31, 2004 more than 13 months *after* the final decision by Liberty Life on Plaintiff's appeal of the denial of her long-term disability benefits, which was made on December 10, 2002.

Further, in <u>Black & Decker Disability Plan v. Nord</u>, the United States Supreme Court noted the differences between the Social Security disability program and ERISA plans. Based on these difference, the Court held that, unlike the SSA, neither plan administrators, nor the Courts are required to apply the "treating physician rule" in interpreting claims for denial of benefits under ERISA. <u>See</u> <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822 (2003). In explaining the differences between the regulations under the SSA and those under ERISA, the Court emphasized that unlike the SSA, ERISA does not require employers to establish employee benefits plans and does not mandate what kind of benefits employers must provide if they choose to have such a plan. <u>Id.</u> at 833. In addition, other Courts have reiterated that the criteria for determining eligibility for Social Security disability benefits are also substantively different than the criteria established by many disability insurance plans. <u>See</u> <u>Pari-Fasano</u> 230 F.3d at 420. <u>See generally</u> 42 U.S.C. §416(i), 423(d). Based on these holdings, courts routinely recognize the differences between the Social Security disability program and ERISA plans and do not require plan administrators to defer to the decisions of the SSA, even when such decisions are available to the plan administrator, which was not the case here.

### b.    The Calvert Case Is Inapplicable To The Case At Bar

In support of her arguments, Plaintiff also cites to a recent case involving Liberty Life, <u>Calvert v. First Finance, Inc.</u>, 2005 U.S. App. Lexis 8684 (6th Cir. 2005). This case, however, is not only distinguishable from the case at bar, but also directly undermines Plaintiff's own arguments.

The decision of the SSA in <u>Calvert</u> was made approximately two years ***before*** Liberty Life denied the continuation of the plaintiff's LTD benefits. In this case, the SSA's decision was made more than 13 months ***after*** the final decision was made by Liberty Life to deny Plaintiff's

claim for LTD benefits. See Calvert, 2005 U.S. App. LEXIS at *3-9. As a result, Liberty Life could not consider a decision by SSA that had not yet been rendered or received by Liberty Life. For this reason alone, Calvert is distinguishable and inapplicable to the case at bar.

In addition, in its conclusion, the Sixth Circuit in Calvert held that its decision was based on the fact that the decisionmaker received a benefit form encouraging the plaintiff to apply for SSA benefits and then relied upon the SSA disability determination to support its own decision on the plaintiff's claim for long-term disability benefits. See Calvert, 2005 U.S. App. LEXIS at *26. As noted above, Liberty Life received no benefit form in this case encouraging Plaintiff to apply for SSA disability benefits, because the decision to grant those benefits was made after Liberty Life's decision to deny benefits in this case.

Finally, in its decision, the Sixth Circuit concluded that there was clear evidence that the reviewing physician did not review all of the records in the file. See Calvert, 2005 U.S. App. LEXIS at *23-25. Specifically, the Sixth Circuit noted that the reviewing physician suggested that a functional capacities evaluation be performed even though such an exam had previously been done and was in the administrative record. Id. Unlike that case, the reviewing physicians in this case, including Dr. Bomalaski, considered all of the medical records and other records in the claims file at the time of their review. There is simply no evidence to the contrary in the administrative record. For all of these reasons, the decision in Calvert is distinguishable and inapplicable to the case at bar.

### 3. The Surveillance Supports Liberty Life's Decision

In her motion for summary judgment, Plaintiff completely mischaracterizes the evidence in the surveillance report and tape detailing her activities. That surveillance is objective evidence contradicting Plaintiff's own description of her functional limitations. During the surveillance, Plaintiff was observed running errands up to three hours at a time and driving her

car up to 20 minutes at a time. (AR00371-372). She was observed "walking and moving in a fluid non-obstructed manner, bending and lifting items such as a case of soda and a gallon of milk without difficulties." (AR 00371). She was also observed walking in a normal fashion, as well as transferring grocery bags from a shopping cart into her car and then carrying grocery bags from her car to her house. (AR 00369, 00371). No restrictions or limitations were noted throughout the observations. (AR 00366-372). The surveillance directly contradicts Plaintiff's claims in her Activities Questionnaire, in which Plaintiff claimed that her daughter and husband shop for groceries and carry groceries into the house, as well as Plaintiff's claim that she is able to drive a car for only five minutes at a time and able to walk for only 10 to 15 minutes at a time. (AR 00410-23). This surveillance, therefore, undermines Plaintiff's credibility in this case.

**4.      There Is No Conflict Of Interest Relating to Liberty Life's Decision In This Case**

In her motion for summary judgment, Plaintiff contends that Liberty Life retained medical reviewers who were biased and that this raises a conflict of interest. Specifically, she argues that because Dr. Bomalaski was retained by Network Medical Review ("NMR") to conduct his review of Plaintiff's claims file and because NMR has retained physicians to review various claims files for Liberty Life over the past few years, that somehow Dr. Bomalaski is therefore biased. Plaintiff's argument is misplaced, ignores the potential conflicts recognized by courts from both reviewing physicians and treating physicians, and relies on evidence that has not been admitted in this case. Further Defendants have separately moved to strike this purported evidence from Plaintiff's motion for summary judgment.

In response to Plaintiff's "conflict" arguments, Defendant incorporates by reference herein its motion to strike any materials relating to the relationship between NMR and Liberty Life. Plaintiff also incorporates by reference its opposition to Plaintiff's motion to add those

materials to the record. Moreover, in her argument at page 7 of her memorandum in support of her motion for summary judgment, Plaintiff misleads this Court by suggesting that somehow Liberty Life refused to produce certain information during discovery. Liberty Life refers Plaintiff and the Court to its answers to interrogatories, which speak for themselves and which clearly explain that Liberty Life did not refuse to produce any information in this case, but rather indicated that it was unable to voluntarily provide additional information because of undue burden and expense.

Second, in arguing that Dr. Bomalaski was biased because he was retained by NMR, which has an ongoing relationship with Liberty Life, Plaintiff ignores the potential bias of her own physicians. The Courts, including the United States Supreme Court, have recognized the various biases of physicians in a denial of benefits case. In rejecting the "treating physician rule," the Supreme Court clearly explained that while a physician "repeatedly retained by benefits plans may have an incentive to make a finding of not disabled," a treating physician may also have an incentive "to favor a finding of 'disabled.'" See Nord, 538 U.S. at 832. As such, courts have already considered the possible competing incentives and biases of reviewing and treating physicians and have declined to draw an inference of bias on behalf of one party over another. Id.

In this case, Dr. Malanoski, Plaintiff's primary care physician, referred Plaintiff to Dr. Goodman, a neurologist and another member of his own practice. Based on their relationship, and Dr. Goodman's concurrence with Dr. Malanoski's prior opinion that Plaintiff suffered from fibromyalgia, Dr. Goodman's opinion lacks credibility, since he merely confirmed the opinion of his own partner. In addition, Dr. Schur, who provided an opinion of Plaintiff's medical condition, was referred to Plaintiff by Dr. Goodman. Therefore, Dr. Schur had a separate

referring relationship with Dr. Goodman and was aware of Dr. Goodman's opinion in this case, making his own opinion less credible. As such, it is clear that Plaintiff's own treating physicians and the alleged "independent" physician, Dr. Schur, had their own potential biases and financial incentives in finding Plaintiff disabled and in concurring with one another's opinions. As such, and as explained in Nord, the potential biases of the various physicians, both treating and reviewing, offset one another. For these reasons, Liberty Life reasonably relied upon the opinions of Dr. Bomalaski and Dr. Miller.

**B.    Plaintiff Offers Nothing More Than Conflicting Evidence Which Does Not Make Defendant's Decision Unreasonable**

In essence, Plaintiff disagrees with the conclusions of Liberty's own reviewers and the independent reviewing physicians. She also contends that the entire investigation by Liberty Life was unreasonable, because it did not consider certain records that she suggests supported her claim. Contrary to this assertion, all of Plaintiff's records were reasonably considered by Liberty Life, and Plaintiff has provided wholly insufficient evidence that the review process was flawed or that the opinions of the reviewing physicians were unreasonable. Again, the evidence on which Plaintiff relies, at best, merely conflicts with the opinions of the reviewing physicians and nurses that reviewed Plaintiff's claim, and with opinions from her own treating physicians. Such evidence, however, does not render Liberty Life's decision unreasonable. See Vlass v. Raytheon Employee's Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001); Sullivan v. Raytheon Co., 262 F.3d 41, 52, n.8 (1st Cir. 2001). As a result, under the deferential standard of review that must be applied in this case, Liberty Life's decision was more than reasonable.

## CONCLUSION

For the reasons stated above, as well as those presented in Defendants' Memorandum in Support of Their Motion for Summary Judgment, Defendants respectfully requests that this Court grant their Motion for Summary Judgment, and deny Plaintiff's Motion for Summary Judgment. If this Court does not grant Defendants' motion, Plaintiff is only entitled to a remand of this case for further review by Liberty Life.

Respectfully submitted,

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON, THE GENRAD, INC. LONG TERM
DISABILITY PLAN, THROUGH TERADYNE,
INC., AS SUCCESSOR FIDUCIARY

By their attorneys,

/s/ Richard W. Paterniti
Andrew C. Pickett, BBO# 549872
Richard W. Paterniti, BBO #645170
JACKSON LEWIS LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025
picketta@jacksonlewis.com
paternir@jacksonlewis.com

July 5, 2005